UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------ x

GREGORY L. SHIELDS, Derivatively on     :
Behalf of Himself and All Others Similarly
Situated,     :

          Plaintiff,     :     11 CV 4917 (PGG)

          v.     :

                                              Electronically filed
K. RUPERT MURDOCH, JAMES R.     :     ECF Case
MURDOCH, LACHLAN K. MURDOCH,
CHASE CAREY, DAVID F. DEVOE,     :
JOEL KLEIN, ARTHUR M. SISKIND, SIR
RODERICK I. EDDINGTON, ANDREW     :
S.B. KNIGHT, THOMAS J. PERKINS,
PETER L. BARNES, JOSE MARIA     :
AZNAR, NATALIE BANCROFT,
KENNETH E. COWLEY, VIET DINH,     :
JOHN L. THORNTON,

                                   :

          Defendants,     :
-and-

NEWS CORPORATION,     :

          Nominal Defendant.     :

(Captions continued on next page)     :

------------------------------------------------------------ x

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO STAY PROCEEDINGS

Brian J. Fischer
JENNER & BLOCK LLP
919 Third Avenue, 37th Floor
New York, New York  10022
(212) 891-1600
bfischer@jenner.com
jshepard@jenner.com

*Attorneys for Nominal Defendant
News Corporation*

Jay B. Kasner
Scott D. Musoff
SKADDEN, ARPS, SLATE,
  MEAGHER & FLOM LLP
Four Times Square
New York, New York  10036
(212) 735-3000
jay.kasner@skadden.com
scott.musoff@skadden.com

*Attorneys for the Individual Defendants*

```
-------------------------------------------------------------x
G.E. STRICKLIN,                            :
Derivatively on behalf of NEWS CORPORATION,
                                           :
              Plaintiff,                                 11 CV 5073 (PGG)
                                           :
        v.
                                           :          Electronically filed
K. RUPERT MURDOCH, et al.,                            ECF Case

              Defendants,                  :

        -and-                              :

NEWS CORPORATION,                          :

              Nominal Defendant.
-------------------------------------------------------------x


-------------------------------------------------------------x
IRON WORKERS MID-SOUTH PENSION             :
FUND, Derivatively on behalf of NEWS
CORPORATION,                               :

              Plaintiff,                   :            11 CV 5556 (PGG)

        v.                                 :
                                                      Electronically filed
KEITH RUPERT MURDOCH, et al.,                         ECF Case
                                           :
              Defendants,                  :

        -and-                              :

NEWS CORPORATION,                          :

              Nominal Defendant.           :
-------------------------------------------------------------x
```

## TABLE OF CONTENTS

**PAGE**

TABLE OF CASES AND AUTHORITIES ....................................................................................... ii

PRELIMINARY STATEMENT ...................................................................................................... 1

STATEMENT OF FACTS ............................................................................................................... 5

    A.    The Delaware Action. ........................................................................................... 5

    B.    The New York Actions. .......................................................................................... 7

    C.    The New York And Delaware Actions Are Functionally Identical ........................ 8

            1.    Same Parties. ............................................................................................. 8

            2.    Similar Underlying Facts. .......................................................................... 9

            3.    Plaintiffs All Failed To Make A Pre-suit Demand. ................................... 11

            4.    Similar Allegations of Injury. .................................................................... 12

ARGUMENT ................................................................................................................................... 13

I.    THE COURT SHOULD EXERCISE ITS AUTHORITY TO STAY THE NEW
    YORK ACTIONS PENDING THE DISPOSITION OF THE DELAWARE
    ACTION. ......................................................................................................................... 13

    A.    Staying This Action Would Avoid Duplication and Waste .................................. 15

    B.    Staying This Action Would Avoid The Risk Of Inconsistent Rulings .................. 16

    C.    The Delaware Action Is Further Advanced Than The New York Actions ............ 17

    D.    Delaware Has A Strong Interest In Resolving This Dispute. ................................ 17

    E.    Plaintiffs' Rights Will Be Adequately Protected If A Stay Is Granted,
        Whereas Defendants Will Be *Severely* Prejudiced If A Stay Is Not
        Granted .................................................................................................................. 19

    F.    Plaintiffs' Contrived Section 14(a) Claim Does Not Preclude A Stay. ................ 20

II.    THE COURT LIKELY DOES NOT HAVE JURISDICTION OVER CERTAIN
    OF THE NEW YORK ACTIONS. .................................................................................. 23

CONCLUSION ................................................................................................................................ 25

## TABLE OF CASES AND AUTHORITIES

<u>Cases</u>                                                                                          <u>Page</u>

*American Disposal Services, Inc. v. O'Brien*, 839 F.2d 84 (2d Cir. 1988)..............................14, 17

*Ash v. Alexander*, No. 99 Civ. 3820 (JSR), 2000 WL 20704
(S.D.N.Y. Jan. 12, 2000)....................................................................................14, 16, 17, 19

*AvMed, Inc. v. Sheridan Healthcorp, Inc.*, No. 09-23851-CIV, 2010 WL 3008811
(S.D. Fla. July 28, 2010)...................................................................................................21

*Bank of America v. Sharin, Inc.*, No. 10 Civ. 7570 (PAC), 2010 WL 5072118
(S.D.N.Y. Dec. 13, 2010)............................................................................................14, 15

*Burford v. Sun Oil Co.*, 319 U.S. 315 (1943)..................................................................................18

*Chartener v. Provident Mutual Life Insurance Co.*, No. Civ.A. 02-8045, 2003 WL
22518526 (E.D. Pa. Oct. 22, 2003).....................................................................................16

*Clark v. Lacy*, 376 F.3d 682 (7th Cir. 2004)............................................................................16, 22

*Colorado River Water Conservation District v. United States*,
424 U.S. 800 (1976) ...............................................................................................4, 13,17

*CTS Corp. v. Dynamics Corp. of America*, 481 U.S. 69 (1987)....................................................18

*De Cisneros v. Younger*, 871 F.2d 305 (2d Cir. 1989) ..........................................2, 13,14, 15,17

*Dimaria v. Goor*, No. 09-CV-1011 (JG) (RML), 2010 WL 3923227
(E.D.N.Y. Sept. 30, 2010) ............................................................................................ 14

*Dore v. Wormley*, 690 F. Supp. 2d 176 (S.D.N.Y. 2010) ...............................................................14

*Feiwus v. Genpar, Inc.*, 43 F. Supp. 2d 289 (E.D.N.Y. 1999)......................................................18

*Field v. Trump*, 850 F.2d 938 (2d Cir. 1988)................................................................................21

*Fink v. Weill*, No. 02 Civ. 10250 (LTS) (RLE), 2005 U.S. Dist. LEXIS 20659
(S.D.N.Y. Sept. 15, 2005)..................................................................................................22

*Fisher v. Kanas*, No. 06-CV-1187 (ADS) (ETB), 2006 U.S. Dist. LEXIS 54563
(E.D.N.Y. Aug. 4, 2006)....................................................................................................22

*Gabelli v. Sikes Corp.*, No. 90 Civ. 4904 (JMC), 1990 U.S. Dist. LEXIS 17015
(S.D.N.Y. Dec. 14, 1990)...................................................................................................21

*Garcia v. Tamir*, No. 99 Civ. 0298 (LAP), 1999 WL 587902
(S.D.N.Y. Aug. 4, 1999) ...................................................................................................15

*General Reinsurance Corp. v. Ciba-Geigy Corp.*, No. 87 Civ. 8304 (ELP),
1988 WL 7796 (S.D.N.Y. Jan. 27, 1988) ..........................................................................14

*Goldentree Asset Management, L.P. v. Longaberger Co.*, 448 F. Supp. 2d 589
(S.D.N.Y. 2006)...........................................................................................................13, 15

*Halpert Enterprises, Inc. v. Harrison*, No. 02 Civ. 9501,
2005 U.S. Dist. LEXIS 15022 (S.D.N.Y. July 26, 2005) ...................................................22

*Halpert Enterprises, Inc. v. Harrison*, No. 06 Civ. 2331 (HB),
2007 U.S. Dist. LEXIS 9769 (S.D.N.Y. Feb. 14, 2007),
*aff'd*, No. 07-1144-cv, 2008 U.S. App. LEXIS 22557 (2d Cir. Oct. 15, 2008) ................20

*International Jensen Inc. v. Emerson Radio Corp.*, No. 96 C 2816, 1996 WL
494273 (N.D. Ill. Aug. 26, 1996).................................................................................16, 21

*Iron Workers of Western Pennsylvania Pension Plan v. Caremark RX, Inc.*,
No. 3:06-1097, 2007 WL 60927 (M.D. Tenn. Jan. 5, 2007) ..............................................19

*L. Harbert, Inc. v. Aetna Casualty & Surety Co.*, No. 96 Civ. 8924 (LAP),
1997 WL 539778 (S.D.N.Y. Aug. 28, 1997).....................................................................14

*Landis v. North American Co.*, 299 U.S. 248 (1936).................................................................4, 13

*Lemon Bay Partners LLP v. Hammonds*, No. 05-327 GMS,
2007 WL 1830899 (D. Del. June 26, 2007).......................................................................24

*Litigation Trust of MDIP, Inc. v. Rapoport*, No. Civ. A. 03-779 GMS,
2005 WL 1242157 (D. Del. May 25, 2005)........................................................................24

*In re Marsh & McLennan Cos. Securities Litigation*, 536 F. Supp. 2d 313
(S.D.N.Y. 2007)...............................................................................................................22

*McCreary v. Celera Corp.*, No. 11-1618 SC, 2011 U.S. Dist. LEXIS 41639
(N.D. Cal. Apr. 13, 2011) ................................................................................................18

*In re Morgan Stanley Derivative Litigation*, 542 F. Supp. 2d 317 (S.D.N.Y. 2008)....................20

*Neary v. Miltronics Manufacturing Services, Inc.*, 534 F. Supp. 2d 227
(D.N.H. 2008) ...........................................................................................................18, 24

*Pennsylvania v. Williams*, 294 U.S. 176 (1935) .............................................................................18

iii

*S. Freedman & Co. v. Raab*, 180 F. App'x 316 (3d Cir. 2006) ......................................................23

*Saltzman v. Kirshner*, No. Civ. 2886, 1978 U.S. Dist. LEXIS 19823
    (S.D.N.Y. Jan. 31, 1978)...............................................................................................2, 21

*Swergold v. Lifetime Corp.*, No. 93 CIV. 4877 (RPP), 1993 WL 512905
    (S.D.N.Y. Dec. 3, 1993) ......................................................................................... 14, 16, 19

*Taro Pharmaceutical Industries, Ltd. v. Sun Pharmaceutical Industries, Ltd.*, No.
    09 Civ. 8262(PGG), 2010 WL 2835548 (S.D.N.Y. July 13, 2010)...................................23

*Teamsters Allied Benefit Funds v. McGraw*, No. 09 Civ. 140 (PGG),
    2010 U.S. Dist. LEXIS 23052 (S.D.N.Y. Mar. 11, 2010) ...........................................20, 24

*Teamsters Local Nos. 175 & 505 Pension Trust Fund v. IBP, Inc.*,
    123 F. Supp. 2d 514 (D.S.D. 2000) ..................................................................... 16, 18, 19

*Telesco v. Telesco Fuel & Masons' Materials, Inc.*, 765 F.2d 356
    (2d Cir. 1985)..................................................................................................14, 17, 21

*Travelers Indemnity Co. v. Monsanto Co.*, 692 F. Supp. 90 (D. Conn. 1988) ........................16, 17

*Ulico Casualty Co. v. Cox Mechanical Contracting, Inc.*,
    No. 04 Civ. 6185 (MHD), 2007 WL 2265563 (S.D.N.Y. Aug. 2, 2007) ..............14, 16, 19

*United Mine Workers of America v. Gibbs*, 383 U.S. 715 (1966) ................................................24

*In re Yahoo! Inc. Shareholders Litigation*, C.A. No. 3561-CC,
    2008 Del. Ch. LEXIS 91 (Del. Ch. July 11, 2008)............................................................22

Statutes and Rules

15 U.S.C. § 78u-4(b)(3)(B)...........................................................................................................22

28 U.S.C. § 1367(c)(2)..................................................................................................................24

Del. R. Civ. P. 12(b)(6)...................................................................................................................7

Del. R. Civ. P. 23.1 .........................................................................................................................7

Other Authorities

7C Charles Alan Wright et al., *Federal Practice and Procedures* § 1838
    (3d ed. 2007) ................................................................................................................14

Movant Nominal Defendant News Corporation ("News Corp." or the "Company") and individual defendants K. Rupert Murdoch, James R. Murdoch, Lachlan K. Murdoch, Chase Carey, Les Hinton, Paul Carlucci, David F. DeVoe, Joel Klein, Arthur M. Siskind, Sir Roderick I. Eddington, Andrew S.B. Knight, Thomas J. Perkins, Peter L. Barnes, Jose Maria Aznar, Natalie Bancroft, Kenneth E. Cowley, Viet Dinh and John L. Thornton (the "Individual Defendants," and collectively, the "Defendants") respectfully submit this memorandum in support of their motion to stay *Shields v. Murdoch, et al.*, No. 11 CV 4917 (PGG) (the "Shields Action"), *Stricklin v. Murdoch, et al.*, No. 11 CV 5073 (PGG) (the "Stricklin Action"), and *Iron Workers Mid-South Pension Fund v. Murdoch, et al.*, No. 11 CV 5556 (PGG) (the "Iron Workers Action") (collectively, the "New York Actions") in favor of the earlier filed and more advanced parallel consolidated action, *In re News Corporation Shareholder Derivative Litigation*, C.A. No. 6285-VCN, proceeding in the Delaware Court of Chancery (the "Delaware Action").

## PRELIMINARY STATEMENT

A derivative action is purportedly brought on behalf of and for the benefit of the corporation, here, News Corp., which is a Delaware corporation subject to Delaware corporation law. As a result, Nominal Defendant News Corp. and the Individual Defendants move to stay the New York Actions in favor of the Delaware Action because they are the third-, fourth-, and fifth-filed shareholder derivative actions purportedly brought on behalf of News Corp. to assert claims against current and former officers and members of the board of News Corp. (the "Board"). All of these actions relate to alleged conduct arising out of, among other things, the Board's oversight of activities at the Company's subsidiaries, including the well-publicized alleged misconduct at *News of the World*, a British newspaper formerly owned by a subsidiary of a subsidiary of News Corp. It is especially burdensome, and not in the interests of the Company,

1

to have to litigate in multiple fora. *See De Cisneros v. Younger*, 871 F.2d 305, 309 (2d Cir. 1989) ("[T]he interest of [plaintiff] – and all parties – will be better served by abstention"); *Saltzman v. Kirshner*, No. Civ. 2886, 1978 U.S. Dist. LEXIS 19823, at *11 (S.D.N.Y. Jan. 31, 1978) (granting defendants' application to stay federal action pending the outcome of state derivative action that contained similar factual allegations).

The first derivative action, *In re News Corporation Shareholder Derivative Litigation*, C.A. No. 6285-VCN, was filed in the Delaware Court of Chancery on March 16, 2011, and has been proceeding before Vice Chancellor John W. Noble for more than eight months. On July 8, 2011, the co-lead plaintiffs in the Delaware Action (who consist of two pension funds and The Amalgamated Bank, which allegedly holds nearly one million shares of News Corp.'s common stock) amended their Consolidated Shareholder Derivative and Class Action Complaint to add claims involving *News of the World* (the "Delaware Complaint," Ex. B). A second derivative action, *Massachusetts Laborers' Pension & Annuity Funds v. Murdoch, et al.*, C.A. No. 6671-VCN, was filed in the Delaware Court of Chancery on July 15, 2011, and has been consolidated with the Delaware Action pursuant to an April 6, 2011 order requiring that all subsequently related cases be consolidated into the first-filed Delaware Action. (Exs. C and D).

On September 21, 2011, co-lead plaintiffs in the Delaware Action filed a Verified Second Amended Consolidated Shareholder Derivative And Class Action Complaint (the "Second Amended Complaint"). (Ex. A). On November 14, 2011, Defendants moved to dismiss the Second Amended Complaint. Pursuant to the scheduling order issued by Vice Chancellor Noble, briefing on Defendants' motions to dismiss will be completed on January 17, 2012. (Ex. E).

Between July 18, 2011 and August 10, 2011, three additional New York Actions were filed in this District. The New York Actions effectively copy substantive portions of the allegations asserted in the more extensive first-filed Delaware Action. The New York Actions and the Delaware Action overlap, as they all: (i) are brought on behalf of Nominal Defendant News Corp.; (ii) name as defendants nearly the entire News Corp. Board as it was composed at the time of the filing of the complaints; (iii) allege the same underlying facts; (iv) assert the same legal theory that the Board was dominated by defendant Mr. K. Rupert Murdoch and failed to oversee the conduct at *News of the World*; and (v) raise the identical threshold issue of whether plaintiffs pled facts with particularity to excuse pre-suit demand on News. Corp.'s Board. As Plaintiff Stricklin herself concedes, the Company and Individual Defendants should not have to litigate these same issues in multiple forums. Stricklin agreed in her August 8, 2011 letter to the Court that "[t]o the extent that there is any overlap of claims asserted in the Stricklin Complaint and in the Consolidated Complaint in Delaware, Plaintiff will agree to a stay of those claims should the Court determine that a coordinated prosecution of such claims is not feasible." (August 8, 2011 Letter to the Court). (Ex. F).

A stay is especially warranted given that the Delaware Action is more advanced and more comprehensive. Vice Chancellor Noble has consolidated the actions before him, appointed lead plaintiffs, imposed a lead-counsel governance structure and has pending before him motions to dismiss the Second Amended Complaint. Briefing on Defendants' motions to dismiss the complaint is scheduled to be completed on January 17, 2012. Thereafter, Vice Chancellor Noble will determine critical issues of Delaware law that are virtually identical to the issues asserted in the New York Actions, including whether plaintiffs satisfied Delaware's

threshold pre-suit demand requirements, and, if so, whether the underlying breach of fiduciary

duty allegations lack merit under Delaware law.

There are compelling reasons why the New York Actions should be stayed in

favor of the parallel Delaware Action whether under the Court's inherent ability to stay cases and

control its docket, *Landis v. North American Co.*, 299 U.S. 248, 254 (1936), for reasons of

comity, or pursuant to the *Colorado River* abstention doctrine, *see Colorado River Water*

*Conservation District v. United States*, 424 U.S. 800, 818 (1976):

- *First*, a stay would avoid judicial waste and inefficiencies associated with litigating two essentially identical derivative actions simultaneously in two forums.

- *Second,* the Delaware Action is further advanced and is a more comprehensive litigation that will adequately address the issues in the New York Actions.

- *Third*, a stay would avoid the risk of inconsistent rulings in the context of pre-trial motions, discovery motions and final judgments.  This is particularly important in derivative actions where the court must rule on threshold demand requirements.

- *Fourth*, given that News Corp. is a Delaware corporation and Delaware law controls, the Delaware Court of Chancery has a strong interest in resolving this dispute.

- *Fifth*, a stay would not injure or prejudice the plaintiffs in the New York Actions (who reside in California, Florida, Louisiana, Mississippi, Oklahoma, and Texas) since their interests are being competently advanced by the co-lead plaintiffs in the Delaware Action and adequately protected by the Delaware Court of Chancery.

- *Sixth*, the Section 14(a) claims in the Shields Action and Iron Workers Action do not alter the analysis because those claims are premised entirely on a finding that the Board breached its oversight fiduciary duties – the core issue already being litigated in Delaware and will be addressed by that court if the plaintiffs were to get beyond Delaware's threshold demand requirements.  A finding in the Delaware Action that there has been no breach of duty will be dispositive as to the Section 14(a) claim because, by definition, it means there was no breach to disclose.  Moreover, a plaintiff cannot fabricate federal

4

jurisdiction, and should not be able to avoid a stay, by asserting a Section 14(a) claim based on an alleged failure to disclose a claimed breach of fiduciary duty. Indeed, case law is clear that such bootstrapping is impermissible and that a Section 14(a) claim premised on a failure to disclose an alleged breach of fiduciary duty does not state a claim.

- *Seventh*, not only is the Delaware court the first court to exercise jurisdiction over this matter, but there are serious questions about whether this Court even has jurisdiction over the New York Actions.

For all the foregoing reasons and as discussed further below, the Court should stay the copycat New York Actions in favor of the more advanced parallel Delaware Action.

## STATEMENT OF FACTS[1]

### A.    The Delaware Action.

On March 16, 2011, two purported shareholders of News Corp. – The Amalgamated Bank and Central Laborers Pension Fund (the "Delaware Plaintiffs") – commenced a derivative action on behalf of News Corp. in the Delaware Court of Chancery asserting that the Company's Board was dominated and controlled by Mr. K. Rupert Murdoch and that its members breached their fiduciary duties under Delaware law by acquiescing in, among other transactions, the Company's purchase of Shine Group, Ltd. Soon thereafter, on March 25, 2011, New Orleans Employees' Retirement System filed a nearly identical complaint

---

[1] Defendants set forth the allegations in the (i) Delaware Verified Second Amended Consolidated Shareholder Derivative And Class Action Complaint filed on September 21, 2011 ("Delaware Compl.") (attached hereto as Ex. A), which amended the first-filed Verified Amended Consolidated Shareholder Derivative And Class Action Complaint filed on July 8, 2011, (ii) the Shields Verified Amended Shareholder Derivative Complaint filed on August 4, 2011 ("Shields Compl."), (iii) the Stricklin Verified Amended Complaint filed on August 16, 2011 ("Stricklin Compl."), and the (iv) Iron Workers Verified Shareholder Derivative Complaint filed on August 10, 2011 ("IW Compl.") solely for purposes of supporting this motion to stay. Defendants reserve the right to dispute each allegation in those complaints and, indeed, vigorously dispute those allegations.

in the Delaware Court of Chancery and on April 6, 2011, the Delaware Court of Chancery entered an order consolidating the actions and appointing lead and co-lead counsel (the "Delaware Consolidation Order"). (Ex. C). The Delaware Consolidation Order provided that "[i]f any further actions arising out of substantially the same facts as the consolidated action are filed in this Court or transferred here from another court," the parties will assist in moving forward the consolidation of those later-filed cases. (*Id.* ¶ 10).

On July 8, 2011, the Delaware Plaintiffs filed the first complaint that included additional breach of fiduciary duty claims under Delaware law arising out of, among other things, the activities at *News of the World*. (Ex. B). Specifically, the Delaware Complaint alleged that the members of the News Corp. Board failed to establish sufficient internal controls to oversee the practices at the Company's subsidiaries, including *News of the World*. (*Id.*).

On July 15, 2011, Massachusetts Laborers' Pension & Annuity Funds, a purported News Corp. shareholder, filed yet another derivative action in the Delaware Court of Chancery (the "Mass. Laborers Action"). (Ex. D). The Mass. Laborers Action raised claims that were essentially identical to those raised in the earlier-filed Delaware Action, including that the directors of the Company were divided in their loyalties to the Company and Mr. K. Rupert Murdoch and that they breached their fiduciary duties under Delaware law by failing to exercise proper oversight over the Company's subsidiaries. On August 24, 2011, Vice Chancellor Noble confirmed the consolidation of the Mass. Laborers Action into the Delaware Action.

Thereafter, the Delaware plaintiffs sought leave to amend their pleading and filed the Second Amended Complaint on September 21, 2011, in which they, among other things, supplemented their allegations regarding *News of the World* and added allegations and claims with respect to News Corp.'s buyback of certain shares. (Ex. A). Pursuant to the stipulated

6

briefing schedule ordered by the Delaware court, on November 14, 2011, the Defendants filed their briefs in support of their motions to dismiss the Second Amended Complaint under Delaware Rules of Civil Procedure 23.1 (for failure to make a demand) and 12(b)(6) (for failure to state a claim). (Ex. E). Those motions will be fully briefed by January 17, 2012. (*Id.*).

### B.   The New York Actions.

After the Delaware Action was filed, on July 18, 2011, Gregory L. Shields, an alleged shareholder of News Corp., brought a substantially similar derivative action in this Court on behalf of News Corp., alleging duplicative breach of fiduciary duty claims under Delaware law against the Board.  On August 4, 2011, Mr. Shields filed a Verified Amended Shareholder Derivative Complaint that added further news clippings and expanded the relief section but added no new claims.  Specifically, Mr. Shields alleged that the Board lacked adequate internal controls, were dominated and controlled by Mr. K. Rupert Murdoch and failed to address the activities that occurred at *News of the World*. (Shields Compl. ¶¶ 10, 50-52, 54, 71, 133-35).  Mr. Shields also tacked on a lone, meritless Section 14(a) claim alleging that the Board failed to disclose the conduct complained of in his complaint. (Shields Compl. ¶¶ 123-29).

On July 22, 2011, G.E. Stricklin, another alleged shareholder of News Corp., brought a fourth derivative action on behalf of the Company in the Southern District of New York, which action was amended on August 16, 2011.  Her complaint, like the others, asserted identical fiduciary duty claims alleging that the Board was dominated and controlled by Mr. K. Rupert Murdoch and that the directors failed to oversee the activities of the Company's subsidiaries. (Stricklin Compl. ¶¶ 2, 36-38, 62, 86, 91).  Ms. Stricklin's claims are rooted solely in Delaware law.   In an August 8, 2011 letter to the Court, Plaintiff Stricklin told the Court that "[t]o the extent that there is any overlap of claims asserted in the Stricklin Complaint and in the

7

Consolidated Complaint in Delaware, Plaintiff will agree to a stay of those claims should the

Court determine that a coordinated prosecution of such claims is not feasible." (August 8, 2011

Letter to the Court).  (Ex. F).

On August 10, 2011, Iron Workers Mid-South Pension Fund ("Iron Workers"),

yet another alleged News Corp. shareholder, brought yet another shareholder derivative action in

this District.  The allegations in the Iron Workers complaint were substantially the same as those

in the prior derivative actions regarding the alleged domination of the News Corp. Board and

alleged failure of the directors to oversee the Company and its subsidiaries.  (IW Compl. ¶¶ 6,

41-42, 79, 93-96, 129).  Iron Workers also added the same Section 14(a) claim that Mr. Shields

asserted, alleging that the Board failed to disclose the conduct in the complaint.  (*Id.* ¶ 123-25).

### C.    The New York And Delaware Actions Are Functionally Identical.

Plaintiff Iron Workers submitted a motion to consolidate all of the New York

Actions.  In its memorandum in support of the motion, Iron Workers argues that all three actions

involve "similar claims, brought derivatively on behalf of News Corp., based on the same factual

allegations and relevant time period, and against substantially the same defendants."  (IW

Consolidation Mem. at 2, Ex. G).  Iron Workers is correct regarding the overlapping nature of

the New York Actions.  Moreover, all of the New York Actions involve substantially the same

parties, the same underlying facts, the same threshold demand-excusal allegations and the same

relief as the prior-pending Delaware Action.

### 1.    Same Parties.

The plaintiffs in the New York Actions and the Delaware Action are all purported

shareholders of News Corp. purporting to sue on its behalf.  (Delaware Compl. ¶¶ 16-18; Shields

Compl. ¶¶ 1, 14; Stricklin Compl. ¶¶ 1, 9; IW Compl. ¶¶ 1, 12).[2] Thus, in effect, the plaintiff is

the same entity in all the cases.  The defendants in the Shields Action and the Delaware Action

are exactly the same; both actions name as defendants the entire Board as of July 2011, which

comprises Defendants K. Rupert Murdoch, James R. Murdoch, Lachlan K. Murdoch, Chase

Carey, David F. DeVoe, Joel Klein, Arthur M. Siskind, Sir Roderick I. Eddington, Andrew S.B.

Knight, Thomas J. Perkins, Peter L. Barnes, Jose Maria Aznar, Natalie Bancroft, Kenneth E.

Cowley, Viet Dinh and John L. Thornton. (Delaware Compl. ¶¶ 20-35; Shields Compl. ¶¶ 16-31).

The Stricklin Action also names as defendants most members of News Corp.'s Board and merely

adds two current and former officers of News Corp.'s subsidiary companies, Les Hinton and

Paul V. Carlucci.  (Stricklin Compl. ¶¶ 12-30).[3]  Similarly, the Iron Workers Action names all

the members of News Corp.'s Board and adds two former officers, Les Hinton and Rebekah

Brooks.[4]  (IW Compl. ¶¶ 14-31); *see also* (IW Consolidation Mem. at 2, Ex. G).

### 2. Similar Underlying Facts.

The New York and Delaware Actions assert the same breach of fiduciary duty

claims under Delaware law against the Board on the theories that the directors allegedly acceded

at all times to the will of Mr. K. Rupert Murdoch, and failed to oversee the Company's

---

[2] The co-lead plaintiffs in the Delaware Action include two pension funds and the Amalgamated Bank, which alleges that it holds nearly *one million* shares of News Corp. common stock. (Delaware Compl. ¶¶ 16-18).  Iron Workers recently averred that it owns 5,030 shares. (08/29/11 Swift Decl. ¶ 3).  Mr. Shields and Ms. Stricklin tellingly do not plead the number of shares that they own.

[3] Indeed, Stricklin amended her complaint to remove defendants Jose Maria Aznar, Roderick I. Eddington, Andrew S.B. Knight, and Rebekah Wade Brooks, making her complaint even less comprehensive.

[4] Individual Defendant Rebekah Brooks is not represented by counsel in this motion and we are unaware as to whether she has been served.

businesses and investigate purported misconduct at *News of the World* and other subsidiaries.

(*E.g.*, Delaware Compl. ¶¶ 57-164; Shields Compl. ¶¶ 10, 51, 71); Stricklin Compl. ¶¶ 2, 35-38,

86; IW Compl. ¶¶ 6, 41-42, 79, 93); *see also* (Iron Workers Consolidation Mem. at 3, Ex. G).

For example, all four complaints allege that the News Corp. Board members:

- knew or should have known of the activities at *News of the World* and failed to take steps to remedy them; (Delaware Compl. ¶¶ 3-5, 7, 36, 57, 60, 89-96, 312-16, 321-24; Shields Compl. ¶¶ 9-10, 16-31, 35, 38, 71, 111-14; Stricklin Compl. ¶¶ 3, 35, 50-51, 86, 105; IW Compl. ¶¶ 6, 41-42, 62, 79, 81, 113, 124).[5]

- failed to oversee and investigate improper conduct that took place at News Corp.'s subsidiaries including those at *News of the World*; (Delaware Compl. ¶¶ 3-5, 7, 11, 36, 57, 60, 89-96, 109, 121-25, 230-32, 241-42; Shields Compl. ¶¶ 10, 39, 46, 51, 54, 61, 69, 112, 133-34; Stricklin Compl. ¶¶ 3, 51, 86 103-05; IW Compl. ¶¶ 5-6, 42, 81, 98, 113, 128-129).

- knew that News Corp. paid out monies to settle litigations in order to conceal activities including those at *News of the World* and other subsidiaries; (Delaware Compl. ¶¶ 94, 101, 103-04; Shields Compl. ¶¶ 54, 89-91; Stricklin Compl. ¶¶ 4, 51-52, 96; IW Compl. ¶¶ 5, 53-54, 56-57, 63, 68, 78).

- were dominated and controlled by Mr. K. Rupert Murdoch, who treated News Corp. as his "family business" and selected the members of News Corp.'s board of directors; (Delaware Compl. ¶¶ 1-2, 7-10, 60, 84, 94-95, 126, 128, 165-74, 178, 185, 189, 194-96, 201; Shields Compl. ¶¶ 50-53, 103-04; Stricklin Compl. ¶¶ 60-62; IW Compl. ¶¶ 93-96, 98, 100-10).[6]

---

[5] All four complaints assert virtually identical allegations in connection with *News of the World*, including: (i) Rebekah Brooks's testimony to a House of Commons select committee in March 2003 (Delaware Compl. ¶ 75; Shields Compl. ¶ 73; Stricklin Compl. ¶ 40; IW Compl. ¶ 67); (ii) Prince William's voicemail that was allegedly intercepted in 2005 by Clive Goodman and Glenn Mulcaire (Delaware Compl. ¶ 61; Shields Compl. ¶ 76; Stricklin Compl. ¶ 45; IW Compl. ¶ 49); (iii) the 2006 arrests and/or 2007 convictions of Goodman and Mulcaire (Delaware Compl. ¶ 61; Shields Compl. ¶ 77; Stricklin Compl. ¶ 45; IW Compl. ¶ 50); and a July 2009 article in *The Guardian* alleging that widespread voicemail interception practices occurred at *News of the World* (Delaware Compl. ¶ 65; Shields Compl. ¶ 83; Stricklin Compl. ¶ 43; IW Compl. ¶ 54).

[6] The Delaware Action and the Stricklin Action use identical language asserting allegations of "nepotism" and that Mr. K. Rupert Murdoch treated News Corp. as his personal "fiefdom." (Delaware Compl. ¶ 1, pg. 52 (heading C); Stricklin Compl. ¶¶ 60-61, 77; Shields Compl. ¶¶ 50-53; IW Compl. ¶¶ 93-96). They also both make the same allegations challenging certain political donations that News Corp. allegedly made to the Republican Governors Association and the U.S. Chambers of Commerce. (Delaware Compl. ¶¶ 191-93; Stricklin Compl. ¶¶ 66-67).

- knew or should have known that there was similar wrongdoing at other subsidiaries of News Corp. and failed to exercise oversight to remedy such conduct; (Delaware Compl. ¶¶ 5-7, 10; Shields Compl. ¶¶ 3, 10, 54; Stricklin Compl. ¶¶ 3, 50; IW Compl. ¶¶ 52-53, 65, 113-14, 124).

- lacked independence because they received compensation for serving as News Corp. Board members; (Delaware Compl. ¶¶ 122, 194-96, 260, 263, 267-69, 274-98; Shields Compl. ¶¶ 16-31, 107-08; Stricklin Compl. ¶¶ 12-27; IW Compl. ¶¶ 14-17, 19, 22-31, 100-10. 117-18) (all alleging the compensation received by board members).

- failed to abide by News Corp.'s internal standards of conduct; (Delaware Compl. ¶¶ 249-53; Shields Compl. ¶¶ 40-42; Stricklin Compl. ¶¶ 37-38; IW Compl. ¶ 115) (quoting from News Corp.'s Statement of Corporate Governance, Code of Ethics and Standards of Business Conduct).

- caused News Corp. to purchase companies that were run by members of the Murdoch family at unfair prices to News Corp.; and (Delaware Compl. ¶¶ 1-3, 8, 170, 216-48; Stricklin Compl. ¶¶ 62-64; IW Compl. ¶ 96).[7]

- caused News Corp.'s stock price to be depressed due to their failed oversight; (Delaware Compl. ¶¶ 11, 167, 201-09 (alleging a "Murdoch discount" on News Corp.'s stock and quoting from August 2, 2010 analyst report); Shields Compl. ¶¶ 10, 50 (exact same); Stricklin Compl. ¶¶ 5, 87(a); IW Compl. ¶¶ 7, 85).

### 3.   Plaintiffs All Failed To Make A Pre-suit Demand.

No plaintiff in Delaware or New York has made the required pre-suit demand on the Board.  (Delaware Compl. ¶ 257; Shields Compl. ¶ 102; Stricklin Compl. ¶ 81; IW Compl. ¶ 92).  Instead, each complaint alleges that the pre-suit demand requirement should be excused as futile for the same reasons.  For instance, all of the complaints allege that the Board was incapable of fairly considering a demand because a majority of the directors (i) were not independent because they received significant compensation from News Corp., were dominated by Mr. K. Rupert Murdoch and had interrelated familial and business relationships with each

---

[7] Both the Stricklin Action and the Delaware Action also challenge the acquisition by News Corp. of Shine Group, a production company founded by Elisabeth Murdoch.  They identically allege that the transaction was unfair to News Corp. and assert a waste claim under Delaware law. (Delaware Compl. ¶¶ 8-10, 216-48, 299-304; Stricklin Compl. ¶¶ 63-64, 97).

other (Delaware Compl. ¶¶ 259-60, 263-65, 274-98; Shields Compl. ¶¶ 103-05, 107-08, 119;

Stricklin Compl. ¶¶ 12-27, 78-80; IW Compl. ¶¶ 93-96, 98, 100-10, 117) and (ii) face a

substantial likelihood of liability for breaching their fiduciary duties by failing to oversee and

sufficiently investigate alleged misconduct (Delaware Compl. ¶¶ 261, 267-69; Shields Compl. ¶¶

106, 110, 114-18, 120; IW Compl. ¶¶ 93, 111-22).

### 4.   Similar Allegations of Injury.

The allegations of injury in the Delaware Action and the New York Actions on

behalf of nominal defendant News Corp. are also effectively the same.  The Actions all allege

that News Corp. has been injured by the Board's failure to respond to the alleged wrongful

activities that occurred at News Corp.'s subsidiaries.  (Delaware Compl. ¶¶ 12, 138-40, 254, 318;

Shields Compl. ¶¶ 11, 92, 97-98; Stricklin Compl. ¶¶ 71-75, 87; IW Compl. ¶¶ 6, 84-88, 130,

133).  Specifically, they all allege that Defendants' purported misconduct has harmed News

Corp.'s "reputation" and "good will."  (Delaware Compl. ¶¶ 11, 138-40; Shields Compl. ¶¶ 92,

136; Stricklin Compl. ¶¶ 71, 87, 92; IW Compl. ¶¶ 1, 7, 42, 88, 113).  Moreover, each complaint

alleges that the Board's failed oversight has resulted in costly settlements and government

investigations, the shut-down of *News of the World* and the termination of News Corp.'s

acquisition of British Sky Broadcasting Group plc.  (Delaware Compl. ¶¶ 101-03, 105, 113-19,

129, 147-51; Shields Compl. ¶¶ 10, 92-93; Stricklin Compl. ¶¶ 4-5, 38, 73-74, 87, 96; IW Compl.

¶¶ 7, 84-88, 113, 133); *see also* IW Consolidation Mem. at 4, Ex. G.

## ARGUMENT

### I. THE COURT SHOULD EXERCISE ITS AUTHORITY TO STAY THE NEW YORK ACTIONS PENDING THE DISPOSITION OF THE DELAWARE ACTION.

The United States Supreme Court has made clear that a district court may stay an action pursuant to "the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (U.S. 1936). Federal courts also have the power to stay a case under the doctrine of abstention where, like here, there is a parallel state court action and a stay would avoid duplication of effort, prevent undue burden and inconsistent rulings, and promote judicial efficiency. *See Colorado River*, 424 U.S. at 818 (finding abstention appropriate where there is a concurrent state proceeding based on considerations of "wise judicial administration"). In determining whether to abstain from hearing a case in favor of a concurrent state court proceeding, a federal court considers a number of factors, including: (1) whether either court has assumed jurisdiction over any res or property; (2) the inconvenience of the federal forum; (3) the avoidance of piecemeal litigation; (4) the order of filing for the state and federal actions; (5) whether federal or state law supplies the rule of decision; and (6) whether the state court proceeding will adequately protect the rights of the party seeking to invoke federal jurisdiction. *Id.* at 818-19; *see also De Cisneros v. Younger*, 871 F.2d 305, 307 (2d Cir. 1989) (affirming stay of litigation in deference to parallel state action). No single factor is determinative, and "'the weight to be given to any one factor may vary greatly from case to case.'" *Goldentree Asset Mgmt., L.P. v. Longaberger Co.*, 448 F. Supp. 2d 589, 593 (S.D.N.Y. 2006) (citation omitted).

The Second Circuit and courts in this District have consistently stayed district court proceedings in favor of substantially similar actions already proceeding in state court.[8] In particular, shareholder suits, such as this derivative action, which do little more than repeat claims in already-existing derivative actions, provide a particularly compelling case for application of *Colorado River* abstention because such actions are brought on behalf of the same corporation and there is a substantial risk of inconsistent decisions. *See, e.g., Telesco v. Telesco Fuel & Masons' Materials, Inc.*, 765 F.2d 356, 359 (2d Cir. 1985) (upholding abstention from shareholder derivative suit when prior shareholder derivative suit had progressed in state court); *Ash v. Alexander*, No. 99 Civ. 3820 (JSR), 2000 WL 20704, at \*3-4 (S.D.N.Y. Jan. 12, 2000) (dismissing a shareholder derivative suit filed in the Southern District of New York in favor of a prior-filed shareholder derivative suit pending in state court); *Dimaria v. Goor*, No. 09 CV 1011 (JG)(RML), 2010 WL 3923227, at \*10-12 (E.D.N.Y. Sept. 30, 2010) (abstaining and dismissing derivative claims in favor of similar claims pending in state court); *see also* 7C Charles A. Wright et al., *Federal Practice and Procedures* § 1838, at 190 (3d ed. 2007) ("The severe financial burden that numerous suits could place on both the corporation and individual defendants, as well as the possibility for abuse that is presented, has led to a tendency among

---

[8] *See, e.g., De Cisneros*, 871 F.2d at 307-09; *Am. Disposal Servs., Inc. v. O'Brien*, 839 F.2d 84, 87-88 (2d Cir. 1988) (upholding district court's decision to abstain in favor of concurrent state action); *Dore v. Wormley*, 690 F. Supp. 2d 176, 191-93 (S.D.N.Y. 2010) (abstaining in deference to parallel state action); *Bank of Am. v. Sharim, Inc.*, No. 10 Civ. 7570 (PAC), 2010 WL 5072118, at \*5 (S.D.N.Y. Dec. 13, 2010) (same); *Ulico Cas. Co. v. Cox Mech. Contracting, Inc.*, No. 04 Civ. 6185 (MHD), 2007 WL 2265563, at \*5 (S.D.N.Y. Aug. 2, 2007) (same); *L. Harbert, Inc. v. Aetna Cas. & Sur. Co*, No. 96 Civ. 8924 (LAP), 1997 WL 539778, at \*5 (S.D.N.Y. Aug. 28, 1997) (same); *Swergold v. Lifetime Corp.*, No. 93 Civ. 4877 (RPP), 1993 WL 512905, at \*4 (S.D.N.Y. Dec. 3, 1993) (same); *General Reins. Corp. v. Ciba-Geigy Corp.*, No. 87 Civ. 8304 (ELP), 1988 WL 7796, at \*3 (S.D.N.Y. Jan. 27, 1988) (same), *aff'd* 853 F.2d 78 (2d Cir. 1988).

federal judges to stay a derivative action pending a final decision in an earlier suit when that litigation promises to adjudicate the rights of all the parties.").

The instant New York Actions present a compelling case for exercising the Court's authority to stay.

### A.   Staying This Action Would Avoid Duplication and Waste.

The New York Actions are copies of the first-filed Delaware Action – they concern substantially the same parties, the same underlying facts, the same threshold demand-excusal allegations and the same relief. *See supra* at pp. 8-12. Those facts weigh heavily in favor of staying the New York Actions. *See Bank of America*, 2010 WL 5072118, at *3 (granting stay where state and federal actions were "essentially the same"); *Garcia v. Tamir*, No. 99 Civ. 0298 (LAP), 1999 WL 587902 at *3 (S.D.N.Y. Aug. 4, 1999) (granting stay and explaining that "even if different relief is sought in the two actions, or the claims are not exactly the same, they are parallel as long as the causes of action are comprised of the same essential issues"). Litigating essentially the same factual and legal issues in both the Delaware Court of Chancery and this Court unnecessarily would invite waste and duplication of effort, the costs of which ultimately would be borne by the courts, Defendants and News Corp. (on behalf of which Plaintiffs purport to act). *See De Cisneros*, 871 F.2d at 309 ("the interest of [plaintiff] – and all parties – will be better served by abstention"). Indeed, "[b]ecause the state and federal issues are 'inextricably linked,'" the risk of piecemeal litigation is real and this Court should abstain from allowing duplicative litigation to proceed unnecessarily in two forums. *Id.* at 308 (stating that "'reasons of wise judicial administration . . . favor abstention in this case in order to avoid duplicative simultaneous litigation'") (citation omitted); *Goldentree Asset Mgmt., L.P.*, 448 F. Supp. 2d at 594 ("The existence of nearly identical claims in two different suits results in

15

needless duplication of proceedings and wasting of judicial resources."); *Swergold*, 1993 WL 512905, at *4 (accord; staying action in favor of Delaware action); *Travelers Indem. Co. v. Monsanto Co.*, 692 F. Supp. 90, 92 (D. Conn. 1988) ("By far the most significant factor . . . is the court's responsibility to discourage duplicative and piecemeal litigation.").[9]

### B.   Staying This Action Would Avoid The Risk Of Inconsistent Rulings.

The failure to stay this action would not only result in waste but also would create a substantial risk that this Court and the Delaware Court of Chancery might render conflicting rulings in connection with discovery motions, preliminary injunction hearings, other pre-trial motions and, ultimately, final judgments.  The possibility that duplicate lawsuits will result in conflicting results is an especially important concern because "both actions are derivative shareholder suits arising out of the same events and involving overlapping claims [and thus] [c]ontinuation of both suits . . . risks inconsistent findings with respect to the real party in interest in both actions (*i.e.* [News. Corp.])." *Ash*, 2000 WL 20704, at *3. [10]

---

[9] *See also Ulico Cas. Co., Inc.*, 2007 WL 2265563, at *5 (staying action because judicial efficiency would be "disserved by having two judges simultaneously adjudicate the identical issues" and "the state forum is wholly capable of providing adequate and extensive relief"); *Chartener v. Provident Mut. Life Ins. Co.*, No. Civ. 02-8045, 2003 WL 22518526, at *3 (E.D. Pa. Oct. 22, 2003) (granting stay where "judicial economy supports avoiding the prospect of redundancy of proceedings "); *Int'l Jensen Inc. v. Emerson Radio Corp.*, No. 96 C 2816, 1996 WL 494273, at *3 (N.D. Ill. Aug. 26, 1996) (discussing that "ordinarily it would be uneconomical as well as vexatious for a federal court to proceed . . . where another suit is pending in a state court presenting the same issues, not governed by federal law, between the same parties") (citation omitted).

[10] *Clark v. Lacy*, 376 F.3d 682, 687 (7th Cir. 2004) (concluding that a stay would protect against the danger of having two different triers of fact overseeing similar pre-trial motions and discovery matters and reaching inconsistent results); *Teamsters Local Nos. 175 & 505 Pension Trust Fund v. IBP, Inc.*, 123 F. Supp. 2d 514, 518-19 (D.S.D. 2000) (stay granted where adjudicating lawsuit "would require the Court to consider the same legal issues which are being

*(cont'd)*

**C.    The Delaware Action Is Further Advanced Than The New York Actions.**

The Delaware Action has been proceeding efficiently for more than eight months and is further advanced than the New York Actions.  Vice Chancellor Noble has already consolidated a number of parallel actions, agreed to a governance structure and has pending before him Defendants' motions to dismiss which will be fully briefed by January 17, 2012.  (Ex. E).  *See Colorado River*, 424 U.S. at 818; *De Cisneros*, 871 F.2d at 308 ("[T]he relative progress of the federal and state proceedings" must be examined); *American Disposal*, 839 F.2d at 87-88 (considering the progress of the state court proceedings as "[p]erhaps of greatest significance"). "With this history, it hardly seems wise to permit plaintiff[s] to start anew in federal court." *Telesco*, 765 F.2d at 363.  Moreover, the Delaware Action is more comprehensive than the New York Actions and will be able to adequately address the issues in the New York Actions.  *See De Cisneros*, 871 F.2d at 308; *Travelers Indem. Co.*, 692 F. Supp. at 93 ("The Delaware action . . . is by far the more comprehensive  . . . . [and] common sense, prevailing law, and the facts of this particular case all militate for a stay.").

**D.    Delaware Has A Strong Interest In Resolving This Dispute.**

Because News. Corp. is a Delaware corporation, Delaware law controls the threshold issue of demand futility as well as the underlying claims of breach of fiduciary duty. *See Ash*, 2000 WL 20704, at \*3 (staying action because state courts possess particular competence in determining what constitutes a breach of fiduciary duty under their own corporate law).  Vice Chancellor Noble, a Delaware judge, will apply Delaware law to determine whether

---

*(cont'd from previous page)*
litigated in Delaware, and present the chance that this Court would resolve those issues differently than the courts of Delaware").

News Corp. – the effective plaintiff in all actions – is entitled to relief under Delaware law for

Defendants' alleged breach of their oversight duties.  Federal courts have not hesitated to stay a

federal action where, as here, the New York Actions involve matters of Delaware corporation

law, and the Delaware Court of Chancery has an interest in overseeing and regulating the

corporation involved in the lawsuit.  Thus, as one district court, relying on "compelling and

controlling" United States Supreme Court precedent, put it:

> [I]t has long been accepted practice for the federal courts to relinquish their
> jurisdiction in favor of the state courts, where its exercise would involve control
> of or interference with the internal affairs of a domestic corporation of the state.

*Neary v. Miltronics Mfg. Servs., Inc.*, 534 F. Supp. 2d 227, 231-32 (D.N.H. 2008) (quoting

*Pennsylvania v. Williams*, 294 U.S. 176, 185 (1935)); *see also Feiwus v. Genpar, Inc.*, 43 F.

Supp. 2d 289, 291 (E.D.N.Y. 1999) (abstaining in deference to state's "strong interest" in "the

uniform development and interpretation of its statutory scheme regarding its corporations");

*McCreary v. Celera Corp.*, No. 11-1618 (SC), 2011 U.S. Dist. LEXIS 41639, at *11 (N.D. Cal.

Apr. 13, 2011) (staying action in favor of Delaware action given the "unique expertise of the

Delaware court in applying Delaware corporate law").  Among other things, this exercise of

comity recognizes the state of Delaware's substantial interest in preserving a uniform and

consistent interpretation of its corporation law.  *See, e.g.*, *Neary*, 534 F. Supp. 2d at 232.  Indeed,

as the United States Supreme Court has made clear:  "[n]o principle of corporation law and

practice is more firmly established than a State's authority to regulate domestic corporations."

*CTS Corp. v. Dynamics Corp. of Am.*, 481 U.S. 69, 89 (1987); *see also Burford v. Sun Oil Co.*,

319 U.S. 315, 329-34 (1943) (explaining that abstention was appropriate to avoid interference

with attempts to establish coherent state policy); *Teamsters*, 123 F. Supp. 2d at 519 ("Because

18

the issues raised in this lawsuit concern the internal affairs of [the company], a Delaware

corporation, those issues must be settled under Delaware law.").

**E.     Plaintiffs' Rights Will Be Adequately Protected If A Stay Is Granted, Whereas Defendants Will Be *Severely* Prejudiced If A Stay Is Not Granted.**

Mr. Shields, Ms. Stricklin, and Iron Workers are represented adequately in the

Delaware Action by lead counsel appointed by the Delaware Court of Chancery and lead

plaintiffs who allegedly hold more than one million shares of News Corp.  Further, their interests

will be fully safeguarded by the Vice Chancellor.  There is no question that the Delaware Court

of Chancery is competent and will protect plaintiffs' interests.  *See, e.g., Iron Workers of W. Pa.

Pension Plan v. Caremark RX, Inc.*, No. 3:06-1097, 2007 WL 60927, at *6 (M.D. Tenn. Jan. 5,

2007) (granting stay, holding that the Delaware action "will more than amply protect [plaintiff

shareholder's] rights"); *Ash*, 2000 WL 20704, at *4 (granting stay, explaining that the state court

proceedings are more comprehensive and will adequately protect plaintiff's rights); *Swergold*,

1993 WL 512905, at *3 (finding Delaware action will adequately protect the rights of plaintiffs,

and "since plaintiffs may be bound by [Delaware's] determination, this action is potentially

superfluous").

The Delaware Court of Chancery is well-equipped to resolve the fiduciary issues

at the heart of this action.  As the federal court in *Teamsters* ruled in abstaining from hearing

Delaware fiduciary claims: "There is no question that [the] Delaware [Court of Chancery] is an

adequate forum for resolving the issues raised in this lawsuit" and "has earned a reputation for its

expertise concerning corporate governance." *Teamsters*, 123 F. Supp. 2d at 519; *see also Iron

Workers*, 2007 WL 60927, at *6.  Given that Ms. Stricklin's, Mr. Shields', and Iron Workers'

19

interests "will be sufficiently, if not more comprehensively, protected" in Delaware, the New York Actions should be stayed. *Ulico Cas. Co.*, 2007 WL 2265563, at *7.

    Moreover, Plaintiffs in the New York Actions are residents of California, Florida, Louisiana, Mississippi, Oklahoma, and Texas. (Shields Compl. ¶ 14; Stricklin Compl. ¶ 9; IW Compl. ¶ 12). Accordingly, they will suffer no inconvenience from pursuing their action in Delaware rather than New York. Plaintiffs cannot articulate any legitimate reason, other than their desire to jockey for position among competing actions, why these cases should proceed along with the Delaware Action. Defendants, on the other hand, will be severely prejudiced if they are forced simultaneously to defend against identical litigations in separate forums.

  **F.**  **Plaintiffs' Contrived Section 14(a) Claim Does Not Preclude A Stay.**

    That Mr. Shields and Iron Workers manufactured a Section 14(a) claim does not alter the conclusion that those cases should be stayed in favor of the Delaware Action.

    *First*, plaintiffs' Section 14(a) claim is brought "on behalf of" News Corp. and cannot go forward unless plaintiffs can satisfy threshold and exacting pre-suit demand requirements, which have already been presented to, and will be decided by, the court in the Delaware Action. (Shields Compl. ¶¶ 123-29; IW Compl. ¶ 123-25). *See, e.g., Teamsters Allied Benefit Funds v. McGraw*, No. 09 Civ. 140 (PGG), 2010 U.S. Dist. LEXIS 23052, at *18 (S.D.N.Y. Mar. 11, 2010) (dismissing securities claims for failure to satisfy pre-suit demand requirements). *Accord Halpert Enters., Inc. v. Harrison*, No. 06 Civ. 2331 (HB), 2007 U.S. Dist. LEXIS 9769, at *22-23 (S.D.N.Y. Feb. 14, 2007), *aff'd*, No. 07-1144-cv, 2008 U.S. App. LEXIS 22557 (2d Cir. Oct. 15, 2008); *In re Morgan Stanley Derivative Litig.*, 542 F. Supp. 2d 317, 327 (S.D.N.Y. 2008).

20

*Second*, the Section 14(a) claim is premised entirely on a finding of a breach of the Board's oversight duties, which is at the core of the Delaware Action. (Shields Compl. ¶¶ 60-61, 70, 123-29; IW Compl. ¶¶ 82-83, 114, 123-25; Delaware Compl. ¶¶ 1-6, 10-12, 36-215, 267-69, 312-326). Hence, a decision in the Delaware Action that Defendants did not breach their fiduciary oversight duties will necessarily dispose of the Section 14(a) claim in its entirety because it will mean that there was no breach to be disclosed and thus, by definition, there could be no violation of Section 14(a). As a result, the requested stay is warranted. *See Telesco*, 765 F.2d at 362 (staying action because "in its essential elements the same cause of action, regardless of theory or pleadings, is asserted in both courts"); *Int'l Jensen Inc.*, 1996 WL 494273, at *4-7 (abstaining from considering plaintiff's Section 14(a) claim in deference to parallel action already proceeding in the Delaware Court of Chancery); *see also Gabelli v. Sikes Corp.*, No. 90 Civ. 4904 (JMC), 1990 U.S. Dist. LEXIS 17015, at *15 (S.D.N.Y. Dec. 14, 1990) (staying federal action because of the possibility that the state court would resolve the federal issue by approving a settlement and its attendant releases); *Saltzman v. Kirshner*, No. 2886, 1978 U.S. Dist. LEXIS 19823, at *11 (S.D.N.Y. Jan. 31, 1978) (granting defendants' application to stay federal action pending the outcome of state derivative action that contained similar factual allegations).[11]

Moreover, Mr. Shields and Iron Workers are not permitted to fabricate federal jurisdiction, and should not be allowed to sidestep the stay called for here, by tacking on a

---

[11] *See also AvMed, Inc. v. Sheridan Healthcorp, Inc.*, No. 09-23851-CIV, 2010 WL 3008811, at *7 (S.D. Fla. July 28, 2010) (staying federal claims in favor of parallel state action; "the fact that the state court cannot hear [plaintiff's] Clayton Act claim . . . is of reduced importance [and] is certainly outweighed by other considerations such as judicial economy, avoiding inconsistent results, and avoiding the appearance of forum shopping").

21

meritless Section 14(a) claim.  It is well established that  a "'plaintiff may not 'bootstrap' a claim

of breach of fiduciary duty into a federal securities law claim by alleging that directors failed to

disclose that breach of fiduciary duty'; 'if the validity of a shareholder's claim of material

misstatement or nondisclosure rests solely on a legal determination . . . that an officer or

director's conduct amounted to a breach of his fiduciary duty, the claim does not state a cause of

action under sections 10(b) or 14(a).'" *Field v. Trump*, 850 F.2d 938, 947 (2d Cir. 1988) (citation

omitted); *Clark*, 376 F.3d at 687 (affirming district court's order staying action and holding that

"[i]f we were to reach the opposite conclusion, future federal plaintiffs would have an incentive

to tag on redundant and non-essential claims . . . to create straw distinctions with an otherwise

parallel state proceeding"). *See also In re Marsh & McLennan Cos. Sec. Litig.*, 536 F. Supp. 2d

313, 322-24 (S.D.N.Y. 2007) (dismissing section 14(a) claim alleging nondisclosure of directors'

alleged mismanagement); *Fink v. Weill*, No. 02 Civ. 10250 (LTS), 2005 U.S. Dist. LEXIS 20659,

at *18-19 (S.D.N.Y. Sept. 15, 2005) ("Section 14(a) cannot serve as 'an avenue for access to the

federal courts in order to redress alleged mismanagement or breach of fiduciary duty.'"); *Halpert*

*Enters., Inc. v. Harrison*, No. 02 Civ. 9501 (SHS), 2005 U.S. Dist. LEXIS 15022, at *9 (S.D.N.Y.

July 26, 2005) (dismissing Section 14(a) claim because it was "an attempt to dress up an ordinary

state breach of fiduciary duty claim in federal securities law clothing – a maneuver that the case

law plainly prohibits").[12]

---

[12] Plaintiffs also cannot complain of any prejudice if the New York actions are stayed since all
discovery is stayed in any event pending the resolution of the motions to dismiss that Defendants
will file in this matter. *See* 15 U.S.C. § 78u-4(b)(3)(B) ("[A]ll discovery and other proceedings
shall be stayed during the pendency of any motion to dismiss."); *Fisher v. Kanas*, No. 06 Civ.
1187 (ADS), 2006 U.S. Dist. LEXIS 54563, at *5 (E.D.N.Y. Aug. 4, 2006); *In re Yahoo! Inc.*
*S'holders Litig.*, C.A. No. 3561-CC, 2008 Del. Ch. LEXIS 91 (Del. Ch. July 11, 2008) (staying
discovery pending resolution of motion to dismiss derivative claims under Rule 23.1).

For all of the foregoing reasons, it would be wasteful and prejudicial for these multiple duplicative derivative actions to proceed in this Court. The Court should, therefore, exercise well settled authority to stay these actions in favor of the prior pending Delaware Action.

## II.      THE COURT LIKELY DOES NOT HAVE JURISDICTION OVER CERTAIN OF THE NEW YORK ACTIONS.

A stay is further warranted because it will allow the Court and the parties to avoid having to devote time and resources to considering the significant questions regarding jurisdiction over certain of the New York Actions. In the Stricklin Action, the complaint states in boilerplate fashion that the Court has diversity jurisdiction, but does not allege the citizenship of any of the fifteen individual defendants. That failure alone justifies dismissal. *See Taro Pharm. Indus. v. Sun Pharm. Indus.*, No. 09 Civ. 8262 (PGG), 2010 WL 2835548, at *18 (S.D.N.Y. July 13, 2010) (dismissing claims for lack of subject matter jurisdiction where complaint did not adequately plead the citizenship of the parties); *see also S. Freedman & Co. v. Raab*, 180 F. App'x. 316, 320 (3d Cir. 2006) ("It is well established that the basis upon which jurisdiction depends must be alleged affirmatively and distinctly and cannot be established argumentatively or by mere inference."). While Ms. Stricklin's counsel stated in its August 8 letter to the Court that it would address this jurisdictional deficiency, the amended complaint filed on August 16 still does not allege the citizenship of any of the defendants. In any event, Ms. Stricklin could not adequately plead diversity jurisdiction because she is a citizen of Florida (*see* Stricklin Compl. ¶ 9), as is individual defendant John Thornton (*see* IW Compl. ¶ 29).

The Court also does not have diversity jurisdiction over the Shields Action, because both Mr. Shields and individual defendant Thomas Perkins are citizens of California. (*See* Shields Compl. ¶¶ 14, 25). In a preconceived but weak attempt to latch on to federal

23

question jurisdiction and differentiate his complaint from the extensive derivative litigation in

Delaware, Mr. Shields tacked on to his state-law fiduciary action a Section 14(a) claim premised

on the theory that the Board did not disclose its alleged fiduciary oversight breaches. (*Id.* ¶¶

123-29). As discussed above, such claim is meritless, *see* pp. 21-22, *supra*, and does not warrant

this Court exercising jurisdiction over the action. *See also Teamsters Allied Benefit Funds*,

2010 U.S. Dist. LEXIS 23052, at *34 (dismissing meritless federal security claims and declining

to exercise supplemental jurisdiction over the plaintiffs' remaining state law claims). Moreover,

because the state law fiduciary claims constitute the real substance of the case and the lone

Section 14(a) claim is a mere appendage, the Court should decline to exercise supplemental

jurisdiction of the fiduciary claims and stay this action in deference to Delaware. *See* 28 U.S.C.

§ 1367(c)(2) (supplemental jurisdiction may be declined where state law claims substantially

predominate over federal claim). "[O]nce it appears that a state claim constitutes the real body of

a case, to which the federal claim is only an appendage, the state claim may fairly be dismissed."

*United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 727 (1966). It is well-settled that a federal

court's ability "to decide ancillary questions of state law" does not mean the court "must tolerate

a litigant's effort to impose upon it what is in effect only a state law case." *Id.*; *see also Lemon

Bay Partners LLP v. Hammonds*, No. 05-327 GMS, 2007 WL 1830899, at *4-5 (D. Del. June 26,

2007) (declining to exercise supplemental jurisdiction where Delaware fiduciary claims

substantially predominated over federal securities claim); *Litig. Trust of MDIP, Inc. v. Rapoport*,

No. Civ. A. 03-779 GMS, 2005 WL 1242157, at *5 (D. Del. May 25, 2005) (refusing to exercise

supplemental jurisdiction over state law claims where such claims predominated over the federal

claims because such "would truly permit the tail to wag the dog.").

The Delaware Court of Chancery, on the other hand, indisputably has subject matter jurisdiction over the Delaware Action pending before it.  If the Court decides to stay the New York Actions, then it need not resolve these jurisdictional matters.  *See Neary*, 534 F. Supp. 2d at 230 n.1 (explaining that to the extent the "court concludes, like a number of these other courts have, that it should abstain from exercising jurisdiction over the plaintiff's claims . . . it need not decide whether it has subject-matter jurisdiction over those claims in the first instance").

## CONCLUSION

For all of the foregoing reasons, the New York Actions should be stayed pending the resolution of the Delaware Action.

Dated:          New York, New York
                December 8, 2011

                                                  Respectfully submitted,

Brian J. Fischer                                  Jay B. Kasner
JENNER & BLOCK LLP                                Scott D. Musoff
919 Third Avenue, 37th Floor                      SKADDEN, ARPS, SLATE, MEAGHER &
New York, New York  10022                            FLOM LLP
Tel. (212) 891-1600                               Four Times Square
Fax. (212) 909-0823                               New York, NY  10036
bfischer@jenner.com                               Tel. (212) 735-3000
                                                  Fax. (212) 735-2000
                                                  jay.kasner@skadden.com
                                                  scott.musoff@skadden.com
Kenneth D. Klein
Julie A. Shepard (*pro hac vice* pending)         *Attorneys for Individual Defendants K. Rupert*
JENNER & BLOCK LLP                                *Murdoch, James R. Murdoch, Lachlan K.*
633 West 5th Street, Suite 3600                   *Murdoch, Chase Carey, Les Hinton, Paul*
Los Angeles, CA  90071                            *Carlucci, David F. DeVoe, Joel Klein,*
(213) 239-5100                                    *Arthur M. Siskind, Sir Roderick I.*
kklein@jenner.com                                 *Eddington, Andrew S.B. Knight, Thomas J.*
jshepard@jenner.com                               *Perkins, Peter L. Barnes, Jose Maria Aznar,*
                                                  *Natalie Bancroft, Kenneth Cowley, Viet Dinh*
*Attorneys for Nominal Defendant*                 *and John L. Thornton*
*News Corporation*

25