# IN THE UNITED STATES DISTRICT COURT

# FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| GREGORY L. SHIELDS, Derivatively on Behalf of Himself and All Others Similarly Situated,<br><br>          Plaintiff,<br><br>   vs.<br><br>K. RUPERT MURDOCH, JAMES R., MURDOCH, LACHLAN K. MURDOCH, CHASE CAREY, DAVID F. DEVOE, JOEL KLEIN, ARTHUR M. SISKIND, SIR RODERICK I. EDDINGTON, ANDREW S.B. KNIGHT, THOMAS J. PERKINS, PETER L. BARNES, JOSE MARIA AZNAR, NATALIE BANCROFT, KENNETH E. COWLEY, VIET DINH, JOHN L. THORNTON<br><br>          Defendants,<br><br>-and-<br><br>NEWS CORPORATION,<br><br>          Nominal Defendant. | Case No. 11-CV-4917 (PGG)<br><br>ECF Case<br><br>**PLAINTIFF GREGORY L. SHIELDS' MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION TO STAY PROCEEDINGS** |

# TABLE OF CONTENTS

I.   INTRODUCTION ........................................................................................... 1

II.  STATEMENT OF FACTS ............................................................................ 3

    A.   The Locus of Activity is in the Southern District of New York .......................... 3

    B.   The Federal Action Differs Significantly from the State Action ........................ 3

III. ARGUMENT ................................................................................................. 4

    A.   Legal Standard .................................................................................................. 4

    B.   The Federal Action and the State Action are not Concurrent ............................ 6

    C.   Sufficient Justification for Abstention does not Exist ....................................... 8

        1.   Neither the State Nor the Federal Court Has Assumed Jurisdiction Over any Res or Property ................................................................................ 9

        2.   The Federal Forum is Not Inconvenient .................................................... 9

        3.   Piecemeal Litigation Will Not Result from Denial of Stay ................... 10

        4.   The Order in Which Jurisdiction Was Obtained Is Inconsequential ....... 11

        5.   Federal Law Supplies the Rule of Decision ........................................... 13

        6.   The State Action Will Not Adequately Protect the Rights of the Company ................................................................................................. 20

    D.   Defendants Fail to Demonstrate a Stay is Appropriate Under the Landis Factors ........................................................................................ 21

        1.   Plaintiff and News Corp will Suffer Considerable Harm if This Action is Stayed ................................................................................................... 21

        2.   Defendants' Assertion of Severe Prejudice is Not Credible .................. 22

    E.   Proceeding with This Action Will Promote The Orderly Course of Justice ....... 23

IV.  CONCLUSION ........................................................................................... 23

# TABLE OF AUTHORITIES

Cases

*Alliance of Am. Insurers v. Cuomo*,
   854 F.2d 591 (2d Cir. 1988) ............................................................................ 7

*AmerisourceBergen Corp. v. Roden*,
   495 F.3d 1143 (9th Cir. 2007) .........................................................................23

*Arkwright-Boston Mfrs. Ins. v. New York*,
   762 F.2d 205 (2d Cir. 1985) ............................................................................ 5

*Ash v. Alexander*,
   No. 99 Civ. 3820 (JSR), 2000 WL 20704  (S.D.N.Y. Jan. 12, 2000)...................18

*Burford v. Sun Oil Co.*,
   319 U.S. 315 (1943) .......................................................................................19

*Cohen v. Reed*,
   868 F. Supp. 489 (E.D.N.Y. 1994) ..................................................................13

*Colorado River Water Conservation District v. United States*,
   424 U.S. 800 (1976) ..........................................................................2, 4, 5, 21

*CTS Corp. v. Dynamics Corp. of America*,
   481 U.S. 69 (1987) .........................................................................................18

*DeCisneros v. Younger*,
   871 F.2d 305 ..........................................................................................11, 12

*Dittmer v. County of Suffolk*,
   146 F.3d  (2d Cir. 1998) ................................................................................. 5

*Dobzeniecki v. Stone & Webster Eng'g Corp.*,
   716 F. Supp. 87 (E.D.N.Y. 1989) ...................................................................10

*Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*,
   544 U.S. 280 (2005) ....................................................................................... 5

*Farkas v. D'Oca*,
   857 F. Supp. 300 (S.D.N.Y. 1994).................................................................. 8

*Feiwus v.  Genpar Inc.*,
   43 F. Supp. 2d 289 (E.D.N.Y. 2010).................................................................18

*Ferguson v. Tabah*,
   288 F.2d. 665 (2d Cir. 1961) ................................................................... 7

*Finkielstain v. Seidel*,
   857 F..2d 893 (2d Cir. 1988) ..............................................................14, 15

*Harrison v. XTO Energy, Inc.*,
   705 F. Supp. 2d 572 ............................................................................16, 17

*Huntington Hosp. v. New England Ins. Co.*,
   2005 U.S. Dist. LEXIS 3115 (S.D.N.Y. 2005) ..................................... 6

*In re Comverse Tech., Inc. Derivative Litig.*,
   2006 WL 3193709 (E.D.N.Y. Nov. 2, 2006) ....................................10, 15, 16, 23

*In re Joint E. & S. Dist. Asbestos Litig.*,
   78 F.3d 764 (2d Cir. 1996) .................................................................... 5

*In re Trump Hotel S'holder Deriv. Litig.*,
   2007 WL 1371317  (S.D.N.Y. Sept. 21 2000) ...................................15

*Kamerman v. Steinberg*,
   681 F. Supp. 206 (S.D.N.Y. 1988) ......................................................14

*Koster v. (American) Lumbermens Mut. Cas. Co.*,
   330 U.S. 518 (1947) .............................................................................20

*Landis v. North America Co*,
   299 U.S. 248 .........................................................................................21

*Lawrence v. Cohn*,
   932 F. Supp. 564 (S.D.N.Y. 1996).......................................................14

*Linens of Europe, Inc. v. Best Man., Inc.*,
   2004 WL 2071689 (S.D.N.Y. Sept. 16 2004) .......................................8, 11, 20

*Loudon v. Archer–Daniels–Midland Co.*,
   700 A.2d 135 (Del.1997) ......................................................................17

*Macy's East, Inc. v. The Emergency Envtl. Servs., Inc.*,
   et al., 925 F. Supp. 191 (S.D.N.Y. 1996)........................................13, 14

*Matsushita Elec. Indus. Co. v. Epstein*,
   516 U.S. 367 (1996) .............................................................................. 3

*McConnell v. Costigan & Co., P.C.*,
   2000 WL 1716273 (S.D.N.Y. Nov. 16 2000) .....................................................11, 13, 15, 20

*McCreary v. Celera Corp.*,
   No. 11-1618 SC, 2011 WL 1399263 ...................................................................................18

*Merrill Lynch v Young*,
   1994 WL 88129 (S.D.N.Y Mar. 15 1994).............................................................................20

*Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Dabit*,
   126 S. Ct. 1503 (2006).......................................................................................................... 6

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
   460 U.S. 1 (1983) ...........................................................................................................passim

*Nat'l Union Fire Ins. Co. v. Karp*,
   108 F.3d 17 (2d Cir. 1997) ................................................................................................. 6

*Neary v. Miltronics Manufacturing Services, Inc.*,
   534 F. Supp. 2d 227 (D.N.H. 2008) ..................................................................................18

*Richard Feiner and Co., Inc. v. Polygram Corp.*,
   610 F. Supp. 250 (S.D.N.Y. 1985).....................................................................................11

*Royal and Sun Alliance Ins. Co. of Canada v. Century Intern. Arms. Inc*,
   466 F.3d 88 (2d. Cir. 2006) ...............................................................................................22

*Sheerbonnet, Ltd. v. Am. Express Bank, Ltd.*,
   17 F.3d 46 (2d Cir. 1994) ................................................................................................... 6

*Spielman v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*,
   332 F.3d 116 (2d Cir. 2003) ............................................................................................... 6

*SST Global Tech., LLC v. Chapman*,
   270 F. Supp. 2d 444 (S.D.N.Y. 2003).........................................................................13, 17

*Steinberg v. Nationwide Mut. Ins. Co.*,
   418 F. Supp. 2d 215 (E.D.N.Y. 2006)..............................................................................5, 9

*Teamsters Local Nos. 175 & 505 Pension Trust Fund v. IBP, Inc.*,
   123 F. Supp. 2d 514 (D.S.D. 2000)....................................................................................19

*Telesco v. Telesco Fuel & Masons' Materials, Inc.*,
   765 F.2d 356 (2d Cir. 1985) ..............................................................................................12

*Travelers Indem. Co. v. Monsanto Co.*,
   692 F. Supp. 90 (D. Conn. 1988) ........................................................................12

*Village of Westfield, N. Y. v. Welch's*,
   170 F.3d 116 (2d Cir. 1999) .......................................................................passim

*Wells Fargo Century, Inc. v. Hanakis*,
   2005 WL 1523788 (E.D.N.Y. Jun. 28 2005) .......................................................... 9

*Woodford v. Cmty. Action Agency of Greene County, Inc.*,
   239 F.3d 517 (2d Cir. 2001) ...................................................6, 8, 9, 11, 13

*Youell v. Exxon Corp.*,
   48 F.3d 105 (2d Cir. 1995) ................................................................................ 9

Statutes

15 U.S.C. § 78aa ...............................................................................................13, 15

18 U.S.C §2701 ...............................................................................................2, 3

I. **INTRODUCTION**

Plaintiff Gregory L. Shields respectfully submits this memorandum in opposition to Defendants' Motion to Stay Proceedings.[1]  Defendants seek extraordinary relief in requesting that this action (the "Federal Action")[2] be stayed in favor of litigation currently pending in the Delaware Court of Chancery (the "State Action"). Def. Mem. at 1.[3]  Defendants erroneously urge the Court refrain from exercising its constitutionally mandated jurisdiction to adjudicate federal claims and stay the Federal Action.  To support their argument, Defendants rely heavily on the fact that the State Action was earlier filed than the Federal Action.  Def. Mem. at 1-2. However, the State Action did not contain a single allegation relevant to the allegations contained in the Federal Action during the eight months it preceded Plaintiff's filing of a complaint.  Moreover, when the State Action was amended on July 8, 2011, only 44 of the 250 paragraphs in the amended complaint had anything to do with subject matter of the complaint that Plaintiff filed only 10 days later. *See* Def. Mem. Ex. B.

On July 18, 2011, Plaintiff brought this action derivatively on behalf of News Corporation ("News Corp" or the "Company") after News Corp's decade-long practice of unlawfully intercepting the voicemail and cell phone traffic of thousands of people was

---

[1] "Defendants" refers collectively to nominal defendant News Corporation, K. Rupert Murdoch, James R. Murdoch, Lachlan K. Murdoch, Chase Carey, David F. Devoe, Joel Klein, Arthur M. Siskind, Sir Roderick I. Eddington, Andrew S.B. Knight, Thomas J. Perkins, Peter L. Barnes, Jose Maria Aznar, Natalie Bancroft, Kenneth E. Cowley, Viet Dinh, and John L. Thornton.

[2] The "Federal Action" refers to *Gregory L. Shields v. K. Rupert Murdoch et al*. Case No. 11-CV-4917 (PGG).

[3] References to "Def. Mem. at __" are to Memorandum of Law in Support of Defendants' Motion to Stay Proceedings.

revealed. ¶ 2.[4]   The "hacking scandal," as it has been dubbed, is the result of Defendants' failure to address widespread deficiencies in internal controls at News Corp.   The Company has been severely injured by Defendants' misrepresentations and omissions regarding the lack of internal controls at News Corp and their failure to properly respond to the unlawful activities at the Company.   ¶ 92. The misconduct has not only caused harm to News Corp's reputation, but has also resulted in major advertisements being pulled from the Company's papers, costly settlements to hacking victims, and the shuttering of *News of the World*, a 168-year-old British newspaper. *Id.* In addition, the scandal scuttled the Company's attempted acquisition of BSkyB. *Id.*  Moreover, the Company has been exposed to criminal investigations by the United States Department of Justice for alleged violations of 18 U.S.C §2701 related to hacking 9/11 victims' private records. ¶ 93. The Company also faces inquiry from the Securities and Exchange Commission for alleged violations of the Foreign Corrupt Practices Act ("FCPA").  *Id.*  Additionally, several top executives have left the Company as a result of the scandal, leaving it in disarray. ¶ 94.  By this action, Plaintiff seeks to recover damages and other relief for News Corp against the News Corp Board members for their breaches of fiduciary duty.

Plaintiff's action is more comprehensive than the Delaware litigation, Defendants' arguments are without merit, and the Motion to Stay should be denied.  First, the *Colorado River* doctrine only applies to claims where a state and federal court share concurrent jurisdiction.  *See Colorado River Water Conservation District v. United States*, 424 U.S. 800, 818 (1976). Defendants have not demonstrated that the Federal Action and the State Action are

---

[4] All citations to "¶__" or "¶¶__" are to the Verified Amended and Supplemented Shareholder Derivative Complaint filed in *Shields v. Murdoch, et al.*, Case No. 11-CV-4917- PGG, filed on August 4, 2011 (the "Amended Complaint"). Docket Entry ("D.E.") 4. ("Fed. Compl.")

"concurrent." Second, because Plaintiff and his counsel are not involved in the State Action in favor of which Defendants seeks to stay this case, the claims raised exclusively in the Federal Action will not be adequately protected.   As set forth below, unlike the State Action, the Federal Action seeks relief for the damages sustained - and that will be sustained - by News Corp as a result of Defendants' violations of Section 14(a) of the Securities Exchange Act. Finally, to the extent that there are similarities between the Federal Action and the State Action, both cases may proceed simultaneously as Congress expressly contemplated "dual litigation in state and federal courts" with respect to securities fraud litigation. *Matsushita Elec. Indus. Co. v. Epstein*, 516 U.S. 367, 383 (1996).

## II.    STATEMENT OF FACTS

### A.    The Locus of Activity is in the Southern District of New York

As set forth in Plaintiff's Amended Complaint, the Federal Action arises from Defendants' failure to address widespread deficiencies in internal controls and misrepresentations regarding those deficiencies. Plaintiff's Amended Complaint also contains allegations that News Corp has been harmed by being exposed to criminal investigations such as that by the United States Department of Justice for alleged violations of 18 U.S.C §2701 related to hacking 9/11 victims' private records. Moreover, News Corp is headquartered in New York, its books and records are located in New York, its corporate counsel is located in New York, and many of the relevant witnesses are located in New York.  Conversely, it is unlikely that any witnesses are located in Delaware.  These factors weigh against a stay of the Federal Action.

### B.    The Federal Action Differs Significantly from the State Action

Although based on related underlying facts, the Federal Action and the State Action differ in a number of significant aspects, both legal and factual. First, the Federal Action

alleges different claims than the State Action, most notably federal securities violations based on false public statements and misstated SEC filings authorized and signed by Defendants. *See* ¶¶59-60, 123-129. In addition, unlike the State Action, the Federal Action includes claims of gross mismanagement, abuse of control and waste of corporate assets, and seeks contribution and indemnification. ¶¶ 137-148. Further, the Federal Action's demand futility analysis contains a more in-depth than the analysis than the State Action. Thus, the Federal Action is more comprehensive in both its depth and breadth than the State Action.

### III.   ARGUMENT

#### A.   Legal Standard

Defendants seek to stay the Federal Action based on the *Colorado River* doctrine. Def. Mem. at 3, 14. The *Colorado River* doctrine allows a federal court to abstain from exercising jurisdiction when, under certain extraordinary and narrow circumstances, "considerations of 'wise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation'" weigh in favor of staying a federal lawsuit in favor of parallel proceeding in state court. *Colorado River Water Conservation Dist. v. United States*, 424 U.S. at 813, 817 (1976). The extraordinary and narrow circumstances contemplated by the Supreme Court in the *Colorado River* do not exist in the present instance.

There is a "virtually unflagging obligation of the federal courts to exercise the jurisdiction given them," which may be avoided only where there is the "clearest of justifications." *Colorado River*, 424 U.S. at 817. While conservation of judicial resources may constitute such a justification under certain circumstances, "the balance [is] heavily weighted in favor of the exercise of jurisdiction" by the federal court. *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 16 (1983). The mere fact that a parallel case is proceeding

in state court does not justify abstention. *Id.* at 817. *See also*, *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 292 (2005) (same); *Steinberg v. Nationwide Mut. Ins. Co.*, 418 F. Supp. 2d 215, 224 (E.D.N.Y. 2006) (same). "Abstention from the exercise of federal jurisdiction is the exception, not the rule .... Abdication of the obligation to decide cases can be justified under this doctrine only in the exceptional circumstances where the order to the parties to repair to the State court would clearly serve an important countervailing interest." *Colorado River*, 424 U.S. at 813. A district court's discretion to abstain must be exercised within the "narrow and specific limits" prescribed by the particular abstention doctrine involved. *Village of Westfield, N. Y. v. Welch's*, 170 F.3d 116, 120 (2d Cir. 1999) (citing *Dittmer v. County of Suffolk*, 146 F.3d at 113, 116 (2d Cir. 1998); *In re Joint E. & S. Dist. Asbestos Litig.*, 78 F.3d 764, 775 (2d Cir. 1996)). The burden of persuasion rests on the party opposing federal jurisdiction. *Arkwright-Boston Mfrs. Ins. v. New York*, 762 F.2d 205, 210 (2d Cir. 1985).

Balancing the *Colorado River* considerations below, and giving due weight to the heavy presumption favoring the exercise of jurisdiction, abstention pursuant to *Colorado River* is not warranted here. Defendants' sole argument in favor of abstention is that there is a state proceeding with certain and limited parallel issues, in which some of Plaintiff's state law claims might be adequately adjudicated.  However, this Court's task "is not to find some substantial reason for the exercise of federal jurisdiction ... rather, the task is to ascertain whether there exist 'exceptional' circumstances, the 'clearest of justifications,' that can suffice under Colorado River to justify the surrender of that jurisdiction." *Moses H. Cone*, 460 U.S. at 25-26. There is nothing "exceptional" about this case, and as such, Defendants' Motion should be denied.

### B.    The Federal Action and the State Action are not Concurrent

As a threshold matter, in order to stay this case, this Court must find that the Federal Action and the State Action are "concurrent" - i.e., involve the same parties, the same claims and the same subject matter. *See Sheerbonnet, Ltd. v. Am. Express Bank, Ltd.*, 17 F.3d 46, 50 (2d Cir. 1994). "Federal and state proceedings are 'concurrent' or 'parallel' for purposes of abstention when the two proceedings are essentially the same; that is, there is an identity of parties, and the issue and relief sought are the same." *Nat'l Union Fire Ins. Co. v. Karp*, 108 F.3d 17, 22 (2d Cir. 1997); *see also Woodford v. Cmty. Action Agency of Greene County*, Inc., 239 F.3d 517, 521 (2d Cir. 2001) (same); *Huntington Hosp. v. New England Ins. Co.*, 2005 U.S. Dist. LEXIS 3115, at *5-7 (S.D.N.Y. 2005) (same). This threshold is not met in this case.

Defendants argue that because both the Federal and State Actions are against the same parties and involve similar underlying facts, they are "concurrent" or "parallel" for the purposes of the *Colorado River* doctrine. Def. Mem. at 8-9.  Although based on some related underlying facts, the Federal Action and the State Action differ in a number of significant aspects. First, unlike the State Complaint, the Federal Complaint alleges federal securities violations based on false public statements and misstated SEC filings authorized and signed by Defendants. *See* ¶¶59-60, 123-129. Congress intended for federal courts to be "the exclusive venue" for securities class actions. *Spielman v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 332 F.3d 116, 123 (2d Cir. 2003). The Securities Litigation Uniform Standards Act of 1998 (SLUSA) was passed to enforce the "congressional preference for 'national standards for securities class action lawsuits involving nationally traded securities.'" *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Dabit*, 126 S. Ct. 1503, 1514 (2006) (citing SLUSA §2(5), 112 Stat. 3227 n.12). Section 10(b) claims "must proceed in federal court if at all." *Id.*  Because the

securities fraud claims in the Federal Action cannot be adjudicated in the State Action, abstention is not warranted. *See e.g., Ferguson v. Tabah*, 288 F.2d. 665, 672 (2d Cir. 1961) (abstention improper where the all rights of parties will not be adjudicated in state suit).

Moreover, in addition to the claims arising from violations of the federal securities laws, the Federal Action alleges gross mismanagement, abuse of control, waste of corporate assets and seeks contribution and indemnification. ¶¶ 137-148.

Second, the Federal Action contains a more detailed and focused analysis of the hacking scandal. *See generally* Fed. Compl.  While the bulk of the State Complaint primarily focuses on alleged improprieties stemming from News Corp's acquisition of Shine Group, and devotes approximately thirteen pages to effectively creating a scrapbook of news clippings related to the hacking scandal, the entirety of the Federal Complaint is devoted to detailing the lack of internal controls and breaches of fiduciary duty that led to the hacking scandal. *Id.*; Def. Mem. Ex. B. In addition, the Federal Complaint's demand futility analysis contains a more in-depth than the analysis than the State Action. *Id.* at ¶¶ 98-122.  The plaintiffs in the State Action characterize the phone-hacking scandal as "just a continuation of the Board's malfeasance," and, in turn, address the hacking scandal as an afterthought. Def. Mem. Ex. A at 4.

In addition, some overlap of subject matter in the Federal Action and the State Action does not render these actions concurrent. To the contrary, the differences among issues described above are strong factors weighing against invoking "exceptional circumstances" as a basis for abstention. *See Alliance of Am. Insurers v. Cuomo*, 854 F.2d 591, 603 (2d Cir. 1988) (refusing abstention because the issues engendered in the state actions were dissimilar to those presented in the federal action: "The federal case raises federal constitutional questions

concerning past deficits and the ban on rehabilitation. As defendants acknowledge, the question of the unconstitutionality of § 8 has not been raised in the state actions."). The fact that both actions arise out of a similar set of circumstances is not sufficient justification for abstention. *See, e.g., Farkas v. D'Oca*, 857 F. Supp. 300, 303 (S.D.N.Y. 1994). Thus, because the state and federal proceedings are not concurrent, abstention under *Colorado River* is not appropriate.

### C.    Sufficient Justification for Abstention does not Exist

Even assuming, arguendo, that the Court were to find that the Federal Action and the State Action are parallel, a stay is not automatic, but rather a matter within the Court's discretion. *Woodford*, 239 F.3d at 523. The Second Circuit has enumerated six factors for this Court to weigh in deciding whether to abstain under *Colorado River*: (1) the assumption of jurisdiction by either court over any res or property; (2) the inconvenience of the federal forum; (3) the avoidance of piecemeal litigation; (4) the order in which jurisdiction was obtained; (5) whether state or federal law supplies the rule of decision; and (6) whether the state court proceeding will adequately protect the rights of the party seeking to invoke federal jurisdiction. *Village of Westfield*, 170 F.3d at 121. Because, as set forth below, the balance is heavily weighted in favor of the exercise of jurisdiction, "the facial neutrality of a factor is a basis for retaining jurisdiction, not for yielding it." *Linens of Europe, Inc. v. Best Man., Inc.*, 2004 WL 2071689, at *5 (S.D.N.Y. Sept. 16 2004) (citing *Woodford*, 239 F.3d at 522).

1.      **Neither the State Nor the Federal Court Has Assumed Jurisdiction Over any Res or Property**

This case does not involve jurisdiction over property. As a result, this factor weighs against abstention. *See Village of Westfield*, 170 F.3d at 122 ("The absence of a res point[s] toward exercise of federal jurisdiction.") (internal quotation marks omitted).[5]

2.      **The Federal Forum is Not Inconvenient**

The federal forum is more convenient than the state forum because, as discussed above, the locus of activity occurred in this judicial district. This, again, weighs against abstention. "[W]here the federal court is 'just as convenient' as the state court, that factor favors retention of the case in federal court." *Village of Westfield*, 170 F.3d at 122 (quoting *Youell v. Exxon Corp.*, 48 F.3d 105, 113 (2d Cir. 1995)).[6] Defendants maintain that they will have to litigate in both federal and state courts if this Court does not abstain, and that litigating in two forums is duplicative and necessarily less convenient than litigating in one forum. *See* Def. Mem. at 15-16. However, this argument would eviscerate *Colorado River*, as federal courts will only abstain under *Colorado River* where there are concurrent and simultaneous federal and state proceedings. As set forth above, the State Action and the Federal Action are not concurrent. Accordingly, this factor could not justify the district court's stay.[7]

---

[5] See also *Woodford*, 239 F.3d at 522 (same); *Steinberg*, 418 F. Supp. 2d at 224 (same); *Wells Fargo Century, Inc. v. Hanakis*, 2005 WL 1523788, at * 10 (E.D.N.Y. Jun. 28 2005) (same).

[6] *See also Woodford,* 239 F.3d at 523 (same); *Steinburg,* 418 F. Supp. 2d at 233 (same); *Wells Fargo* 2005 17440 at * 10 (same).

[7] Of Course, Counsel in the Federal Action will make every effort to coordinate discovery with Counsel in the State Action and attempt to take other steps to avoid any unnecessary duplication in litigation of the two Actions.

### 3.    Piecemeal Litigation Will Not Result from Denial of Stay

It is well-established that a stay based on the need to avoid piecemeal litigation is warranted with "only the clearest of justifications," *Moses H. Cone*, 460 U.S. at 16, and the risk of piecemeal litigation alone is insufficient to justify abstention. *See, e.g., Dobzeniecki v. Stone & Webster Eng'g Corp.*, 716 F. Supp. 87, 91 (E.D.N.Y. 1989). Whenever parallel actions overlap, there is a potential for waste of judicial resources and duplicative efforts. For that reason, the Court must look beyond the routine inefficiency that is the inevitable byproduct of parallel proceedings to determine whether there is some "exceptional basis" for abstention.

Defendants argue that a stay would avoid piecemeal litigation because the State Action proceedings are "functionally identical." Def. Mem. at 15-16. However, this is not true.  For example, a finding by the state court that demand was not excused (which is highly unlikely) has no impact on the securities fraud claims in the Federal Action and, thus, can have no preclusive effect as to those claims.

Additionally, "[T]he potential for piecemeal litigation is always present in potentially parallel litigations, and the courts must look beyond this factor to ascertain whether abstention is appropriate." *In re Comverse Tech., Inc.*, 2006 WL 3193709, at *6 (E.D.N.Y. Nov. 2, 2006)

More importantly, and perhaps as a result of the fact that these cases are not in fact parallel, Defendants' proposed solution of abstention would not avoid piecemeal litigation. Under Defendants' approach, this Court is to (1) wait to see if there is actual litigation in the State Action, and then (2) resume adjudication of this case. By requesting a break in the action here, with an inevitable resumption, Defendants' proposed course of action actually encourages piecemeal litigation, rather than avoiding it, especially given the exclusive federal

jurisdiction over Plaintiff's securities claim. *Linens of Europe, Inc. v. Best Mfg., Inc.*, 2004 WL 2071689, at \*6 (S.D.N.Y. Sept. 16, 2004) (noting that "any concern about the prospect of piecemeal litigation weighs in favor of retaining jurisdiction"). "Indeed, abstention is clearly improper when," as here, "a federal suit alleges claims within the exclusive jurisdiction of the federal courts." *Id.* (internal quotations omitted); *see McConnell*, 2000 WL 1716273, at \*6 (S.D.N.Y. Nov. 16 2000)(noting that where federal court has exclusive jurisdiction to hear an ERISA claim, "abstention might only serve to encourage piecemeal adjudication of the issues raised in the federal suit," and therefore weighs against abstention) (internal quotations omitted); *Richard Feiner and Co., Inc. v. Polygram Corp.*, 610 F. Supp. 250, 252 (S.D.N.Y. 1985) (stating that "avoidance of piecemeal litigation actually counsels against the stay, for [plaintiff's] copyright claims can only be resolved in federal court"). At best, this factor is neutral, which means it weighs against abstention. *Woodford*, 229 F.3d at 522.

### 4.    The Order in Which Jurisdiction Was Obtained Is Inconsequential

Defendants also attempt to create an artificial distinction by arguing the State Action is more advanced than the Federal Action because at the time Defendants served their Motion to Stay, the federal cases had not been consolidated and a motion to dismiss is pending in the State Action. Def. Mem. at 17. The reality is that the State Action was amended to contain allegations similar to those in the Federal Action just 10 days prior to the filing of the Federal Action and has by no means advanced significantly beyond the Federal Action.

Defendants' own authority notes that the degree to which litigation has advanced is not based on a simple "race to the courthouse," rather, "the relative progress of the federal and state proceedings must be carefully examined." *DeCisneros v. Younger,* 871 F.2d 305, 308 (citing *Moses H. Cone Memorial Hosp. v. Mercury Const. Corp.,* 460 U.S. 1, 21).  Likewise,

Defendants correctly note that the magistrate in *American Disposal* considered the progress of the state court proceedings as "[p]erhaps of greatest significance" under that specific set of circumstances, however, unlike the Delaware court in the State Action, the state court in *American Disposal* had conducted extensive discovery, including five days of hearings and rendered interlocutory orders addressing the merits of the underlying claims. *American Disposal Services, Inc. v. O'Brien*, 839, F.2d 84, 88 (2d Cir. 1988); Def. Mem. at 17.

Defendants' cite to *Telesco* is equally distinguishable.  Def. Mem. at 17; *Telesco v. Telesco Fuel & Masons' Materials, Inc.,* 765 F.2d 356 (2d Cir. 1985). While the five years of protracted intrafamilial state litigation in *Telesco* may well have constituted history that made it "hardly [seem] wise to permit plaintiff to start anew in federal court," the State Action proceedings have not surpassed the Federal Action in any significant way.  *Telesco*, 765 F.2d 356, 363.  To the contrary, the State Action claims related to the hacking scandal were only tacked on to the State Action Complaint days before Plaintiff filed an action seeking redress under federal law that focused on the harm resulting from the hacking scandal.  Notably, the authority Defendants cite in support of their contention that the State Action is "more advanced" simply because the State Action was earlier filed is readily distinguishable.  *See Telesco v. Telesco Fuel & Masons' Materials, Inc.,* 765 F.2d 356- 357, 359 (the state action was filed in 1978, five years before the federal action was filed in 1983); *American Disposal Services, Inc. v. O'Brien*, 839, F.2d 84, 88 (the state action was filed in August of 1986, seven months before the federal action was filed in March of 1987*); De Cisneros v. Younger,* 871 F.2d 305, 306 (the state action had been filed nearly three months before the federal action).  In contrast, in the present instance, the Federal Action was filed virtually simultaneously with the State Action.  *See e.g. Travelers Indem. Co. v. Monsanto Co.,* 692 F. Supp. 90, 92 (D. Conn.

1988) (where two state actions were filed a day after the federal action, the court noted "in effect they were filed virtually simultaneously"). Here, the State Action only began to address claims related to the hacking scandal days before the Federal Action was filed.

Moreover, given the heavy burdens on the state court, the Federal Action is likely to move forward more quickly than the State Action - which may explain Defendants' Motion. *See Macy's East, Inc. v. The Emergency Envtl. Servs., Inc*., et al., 925 F. Supp. 191, 193 (S.D.N.Y. 1996). Thus, there is little or no chance that permitting the Federal Action to proceed would duplicate prior activities in the State Action. Because neither case is significantly advanced, this factor, too, weighs against abstention. *McConnell v. Costigan & Co., P.C.*, 2000 WL 1716273, at *7 (S.D.N.Y. Nov. 16 2000).

### 5.    Federal Law Supplies the Rule of Decision

While Plaintiff in the Federal Action asserts pendent state-law claims, its federal claims predominate. As the Second Circuit in *Woodford* explained:

> Even where there are some state-law issues, "the presence of federal law issues must always be a major consideration against surrender." ... And "if there is any substantial doubt" as to whether "complete and prompt" protection of the federal right is available in the state proceeding, dismissal "would be a serious abuse of discretion." 239 F.3d at 523 (quoting *Moses H. Cone*, 460 U.S. at 26, 28); *Cohen v. Reed*, 868 F. Supp. 489, 500 (E.D.N.Y. 1994) ("The presence of a claim for which there is exclusive federal jurisdiction weighs heavily in favor of the exercise of federal jurisdiction.").

It is axiomatic that federal courts have exclusive jurisdiction over claims alleged under the Securities Exchange Act of 1934. *SST Global Tech., LLC v. Chapman*, 270 F. Supp. 2d 444, 463 (S.D.N.Y. 2003); 15 U.S.C. § 78aa. As a result, federal courts may not abstain from hearing actions alleging federal securities law violations. See *SST Global Tech*., 270 F. Supp. 2d at 463. (finding that, because a section 10(b) claim was alleged, and because federal courts

have exclusive jurisdiction over federal securities claims, the federal action must proceed despite existence of pending parallel state actions); see also *Finkielstain v. Seidel*, 857 F..2d 893, 896 (2d Cir. 1988) (finding that abstention is inappropriate where federal securities law claims are asserted because those claims fall within the exclusive jurisdiction of the federal courts); *Lawrence v. Cohn*, 932 F. Supp. 564, 575 (S.D.N.Y. 1996) (refusing to abstain due to plaintiff's 10(b) claims); *Kamerman v. Steinberg*, 681 F. Supp. 206, 212-13 (S.D.N.Y. 1988) (same). "Were a federal court to abstain in these circumstances, plaintiffs would lack a forum in which to vindicate their federal statutory rights." *Lawrence*, 932 F. Supp. at 575. In contrast to the other claims at issue, nearly all of which are governed by familiar and settled common law principles, securities fraud claims are still relatively controversial causes of action, and the jurisprudence of such actions continues to evolve in uncertain fashion. "Oversight of that evolution must remain the responsibility of the federal courts." *Macy's East, Inc*., 925 F. Supp. at 193. Further, Defendants' own authority notes that "when the applicable substantive law is federal, abstention is disfavored, though the inverse proposition will not alone support a surrender of federal jurisdiction." *De Cisneros* 871 F.2d at 309 (citing *Moses H. Cone*, 460 U.S. at 26)

Moreover, absent federal claims, abstention still would not be warranted here. As the Second Circuit has noted, "although the presence of federal issues strongly advises exercising federal jurisdiction, the absence of federal issues does not strongly advise dismissal, unless the state law issues are novel or particularly complex." *Village of Westfield*, 170 F.3d at 124 (citations omitted). Defendants have failed to demonstrate how the issues implicated in this case present complex or unique questions. Indeed, federal courts in this district are well-versed in handling cases involving breach of fiduciary duty claims. *See, e.g., In re Pfizer Inc.*

*Shareholder Derivative Litig.* 722 F. Supp. 453 (S.D.N.Y 2010)(denying motion to dismiss as to state law breach of fiduciary duty cases); *In re Trump Hotel S'holder Deriv. Litig.,* 2007 WL 1371317 *5 n.2 (S.D.N.Y. Sept. 21 2000)(interpreting Delaware law in analyzing demand futility).

This factor, protecting the federal plaintiff's rights, is the one that is most difficult for Defendants to overcome. In *McConnell v. Costigan*, 2000 WL 1716273, at *7 (S.D.N.Y. Nov. 16, 2000), the court stated:

> In analyzing this factor, "federal courts are to determine whether the parallel state-court litigation will be an adequate vehicle for the complete and prompt resolution of the issues between the parties." *Village of Westfield*, 170 F.3d at 124 (internal quotation marks and citations omitted). "If there is any substantial doubt as to this, it would be a serious abuse of discretion to grant the stay or dismissal at all." *Moses H. Cone Mem'l Hosp*., 460 U.S. at 28.

A core fact posing an insurmountable obstacle for Defendants is that the State Action does not include a federal securities claim.   In a desperate attempt to avoid litigation proceeding in this jurisdiction, Defendants argue that Plaintiff has contrived his Section 14(a) claim to fabricate federal jurisdiction and sidestep a stay, and that because Plaintiff's Section 14(a) claim cannot go forward until the threshold of demand futility is determined, a stay is warranted.  Def. Mem. at 20.  This argument is a red herring.

Addressing this very issue the court in *In Re Comverse* stated:

> Contrary to Defendants' argument, and as plaintiff correctly notes, "the federal action [here] differs significant from the state action." Unlike in the state derivative action, plaintiffs here claim that, among other thing*s, defendants violated sections 10(b) and 14(a) of the Securities Exchange Act, and rules 10b-5 and 14a-9 promulgated thereunder. It is axiomatic that federal courts have exclusive jurisdiction over these claims. E.g.,* 15 U.S.C. § 78aa ("The district courts of the United States ... shall have exclusive jurisdiction of violations of this chapter or the rules and regulations promulgated thereunder, and of all suits ... brought to enforce any liability or duty created by this chapter

and the rules and regulations promulgated thereunder ...”); *Finkielstain v. Seidel*, 857 F.2d 893, 896 (2d Cir.1988).

> *In re Comverse Tech., Inc. Derivative Litig.*, 2006 WL 3193709 (E.D.N.Y. Nov. 2, 2006) (Emphasis added).

The court in *In re Comverse* further held that even though state law on demand futility must be applied to the federal securities claims at issue, this did not require abstention:

> ***The practical effect of Comverse's argument is to abdicate to the state court the decision on whether plaintiffs' federal securities claims should proceed in the first instance, thereby largely divesting the Court of jurisdiction over claims which Congress intended to reside exclusively in the federal courts. Such a practice would not only be directly contrary to Congress's intent, but would be wholly incompatible with our system of federalism***. *See* 17A Moore's Federal Practice, § 122.06[5][b], n. 53 (“Federal abstention in deference to state proceeding is inappropriate if state's preclusion law would bar subsequent federal adjudication of exclusively federal issue.”) (citing *Will v. Calvert Fire Ins. Co.,* 437 .S. 655, 670 (1978) (Brennan, J., dissenting) (state court decisions should not have preclusive effect over matters within exclusive federal court jurisdiction)).

> *In re Comverse Tech., Inc. Derivative Litig.,* 2006 WL 3193709 (E.D.N.Y. Nov. 2, 2006) (emphasis added.)

District courts considering cases substantially similar to the present action have routinely concluded that a stay of Exchange Act claims is not appropriate. *See, e.g., Harrison v. XTO Energy, Inc.,* 705 F. Supp. 2d 572, 576–77 (N.D. Tex. 2010) (rejecting argument that similarity between Delaware-law breach of fiduciary duty claims and Exchange Act Sections 14(a) and 20(a) claims renders abstention appropriate); *In re Comverse Technology, Inc. Derivative Litigation,* 2006 WL 3193709, at *3 (E.D.N.Y. Nov. 2, 2006) (“given the exclusive jurisdiction of the federal courts over Exchange Act claims, courts confronted with *Colorado River* abstention requests in cases involving such claims have routinely denied those

requests"); *SST Global Technology, LLC v. Chapman,* 270 F.Supp.2d 444, 463–64 (S.D.N.Y.2003) (rejecting argument that abstention was appropriate because a pending Delaware action would resolve the factual issues underlying federal Exchange Act claims).

The Northern District of Texas decision in *Harrison* is particularly instructive.  There, as here, the federal plaintiffs brought claims under Section 14(a) of the Securities Exchange Act alleging that the defendants issued proxy statements containing materially misleading information. *Harrison,* 705 F. Supp. 2d at 574.  The defendants moved to stay in deference to actions in Texas and Delaware state courts that alleged Delaware-law claims of breach of fiduciary duty. *Id.* at 574–75. The *Harrison* court noted that despite the similarities between Delaware law and the Exchange Act, "the federal scheme of disclosure is not replicated in Delaware law." *Id.* at 577 (quoting *Loudon v. Archer–Daniels–Midland Co.,* 700 A.2d 135, 141 n. 18 (Del.1997)).  It reasoned, moreover, that although the state actions sought the same relief and depended upon the same facts alleged in the federal action, because claims under the Securities Exchange Act could not be litigated anywhere but in a federal court, there was no way that a state court could dispose of those claims. *Id.* Thus, relying in part on Ninth Circuit law, the *Harrison* court held that a stay of the Exchange Act claims was not appropriate. *Id.* at 576–78.

In light of the federal securities claims, abstention is inappropriate, and Defendants' attempts to frame the Federal Action's claims as arising under state law fall short.  For example, Defendants' citation to *Ash*, in support of the proposition that state courts possess particular competence in determining what constitutes a breach of fiduciary duty under their own corporate law, is inapposite. Def. Mem. at 18.  However, unlike the instant action, in *Ash,* the only claims in issue were those arising under a breach of fiduciary duty under state law.

*Ash v. Alexander,* No. 99 Civ. 3820 (JSR), 2000 WL 20704 at *3 (S.D.N.Y. Jan. 12, 2000).

Defendants' cites to *Neary* and *Feiwus* are equally distinguishable in that the *Neary* and

*Feiwus* courts abstained from addressing plaintiff's claims seeking dissolution and other

equitable relief because of the well established practice of federal courts abstaining from

hearing claims for dissolution to avoid infringing on states' "important interests in overseeing

the continued existence of corporations created under its laws."  Def. Mem. at 18; *Neary v.*

*Miltronics Manufacturing Services, Inc.,* 534 F. Supp. 2d 227, 230-231 (D.N.H. 2008); *Feiwus*

*v. Genpar Inc*., 43 F. Supp. 2d 289, 291 (E.D.N.Y. 2010).  Here, Plaintiff seeks relief under

federal law as opposed to seeking dissolution that is inherently and inextricably tied to state

law.

Further, Defendants' cite to *McCreary* is misleading in that there, Delaware's "unique

expertise" in applying Delaware corporate law was not the lynchpin of the court's decision to

stay the federal case; rather the fact that both the state and federal cases contained identical

allegations relating to false and misleading proxy statements prompted the court to make a rare

exception to the accepted practice that "generally district courts may not invoke the *Colorado*

*River* doctrine to stay [Exchange Act claims]."  Def. Mem. at 18; *McCreary v. Celera Corp.,*

No. 11-1618 SC, 2011 WL 1399263 at* 4 (N.D. Cal. April 13, 2011).

Defendants cite to *CTS* is similarly misleading.  Def. Mem. at 18. In *CTS*, in the context

of analyzing whether a state law relating to the acquisition of control shares was preempted by

federal law, the Supreme Court stated that, "[n]o principle of corporation law and practice is

more firmly established than a State's authority to regulate domestic corporations, **including**

**the authority to define the voting rights of shareholders***.*" *CTS Corp. v. Dynamics Corp. of*

*America*, 481 U.S. 69, 73, 89 (1987) (emphasis added) (citing Restatement (Second) Conflict

of Laws §304 (1971)) ("concluding that the law of the incorporating State generally should 'determine the right of a shareholder to participate in the administration and affairs of a corporation.'")  Here, Plaintiff's efforts to seek redress under the federal securities laws do not jeopardize Delaware's ability to enforce its own corporate laws.

In addition, Defendants' cite to *Burford* in support of its contention that abstention is "appropriate to avoid interference with attempts to establish coherent state policy" is misleading.  Def. Mem. at 18.  In *Burford*, the Supreme Court considered the validity of the Texas Railroad Commission's order granting permission to drill for oil where the order was "part of the general regulatory system devised for the conservation of oil and gas **in Texas**," *Burford v. Sun Oil Co.,* 319 U.S. 315, 318 (1943) (emphasis added).  Where the *Burford* court grappled with a host of state-specific geological, legal and economic issues related to the management of the production of oil in Texas, the Federal Action clearly relates to the enforcement of the federal securities laws.  *See Id*. at 320.

Finally, Defendants cite *Teamsters* in support of the proposition that issues concerning the internal affairs of a Delaware corporation must be settled under Delaware law. Def. Mem. at 18-19.  However, *Teamsters* is easily distinguishable in that there, the plaintiff only alleged claims related to breaches of fiduciary duties arising from the proposed merger of a Delaware company. *Teamsters Local Nos. 175 & 505 Pension Trust Fund v. IBP, Inc*., 123 F. Supp. 2d 514, 516 (D.S.D. 2000) Unlike *Teamsters,* the scope of Federal Action is not limited to the regulation of the internal affairs of a Delaware corporation.

Although Plaintiff's Exchange Act claims present similar factual issues and may turn on a similar legal standard as the breach of fiduciary duty claims asserted in the Delaware action, the fact remains that the Delaware court lacks authority to resolve Plaintiff's Exchange Act

claims, and Defendants have failed to provide a compelling reason to stay the Federal Action and proceed in state court. Therefore, a stay of these exclusive federal claims is not appropriate.

> **6.      The State Action Will Not Adequately Protect the Rights of the Company[8]**

In analyzing this factor, "federal courts are to determine whether the parallel state-court litigation will be an adequate vehicle for the complete and prompt resolution of the issues between the parties." *Village of Westfield*, 170 F.3d at 124 (internal quotation marks and citations omitted). "If there is any substantial doubt as to this, it would be a serious abuse of discretion to grant the stay or dismissal at all." *Moses H. Cone*, 460 U.S. at 28. Here, the State Action cannot adequately protect Plaintiff's rights because the federal courts have exclusive jurisdiction over Plaintiff's securities fraud claims. See, *supra,* Section C.5 *See also Linens of Europe, Inc*., 2004 WL 2071689 18575, at *6-7 (holding that a state court could not adequately protect the rights of a party raising RICO and antitrust claims); *McConnell*, 2000 WL 1716273, at *7 (holding that a state suit could not adequately protect a plaintiff's rights due to the federal court's exclusive jurisdiction over the plaintiff's ERISA claims); *Merrill Lynch v Young*, 1994 WL 88129, at *4 (S.D.N.Y Mar. 15 1994) ("[B]ecause the state case does not 'embrace' all of the issues asserted in the federal litigation, the state forum is not necessarily adequate to protect plaintiff's rights"). Thus, this factor also weighs against abstention.

In short, all six *Colorado River* factors favor the Court's retention of jurisdiction. Defendants have not shown any "exceptional circumstances" justifying the Court's abdication

---

[8] Defendants infer that the Court should place weight on the fact that plaintiff in the State Action is an institutional investor.  But this is unpersuasive.  The size of plaintiffs' financial stake in the corporation is immaterial in shareholder derivative actions.  *See Koster v. (American) Lumbermens Mut. Cas. Co.*, 330 U.S. 518, 523 (1947).

of its "virtually unflagging obligation ... to exercise the jurisdiction given [it]." *Colorado River,* 424 U.S. at 817.

### D.   Defendants Fail to Demonstrate a Stay is Appropriate Under the Landis Factors

Defendants also cite *Landis v. North America Co.* in support of staying this action.  A stay under *Landis* is appropriate "only in rare circumstances."  *Landis*, 299 U.S. 248, 255 (1936).  The United States Supreme Court held in *Landis* that a party seeking "a stay must make out a clear case of hardship or inequity in being required to go forward, if there is even a fair possibility that the stay for which he prays will work damage to some one else."  *Id.* [sic]. Disregarding the *Landis* standard, Defendants encourage the Court to ignore the significant harm that would be imposed on Plaintiff if a stay were granted.  Defendants further fail to recognize that under *Landis* there is nothing inherently improper or untoward about two purportedly-similar actions proceeding contemporaneously.   Additionally, Defendants' self-serving assertion that they will incur a substantial hardship if this action proceeds is not credible in light of the Defendants' questionable motives.

### 1.   Plaintiff and News Corp will Suffer Considerable Harm if This Action is Stayed

Imposing a stay of this action at its current stage would cause significant harm to both Plaintiff and News Corp, whose interests Plaintiff seeks to protect, resulting in a considerable delay in holding Defendants' accountable for their wrongdoing and providing complete relief to the Company.  As described above, regardless of the outcome of the state proceeding, this Court must ultimately make a determination of the merits of Plaintiff's claims because this Court has exclusive jurisdiction over a portion of Plaintiff's claims.   Moreover, only this Court can

provide complete relief to News Corp because this action contains unique claims not present in the State Action.

Additionally, there is no assurance that the State Action will adequately protect Plaintiff, as this action concerns unique claims. Indefinite stays, such as the one requested by Defendants here, seeking to stay this action until the resolution of the State Action, are particularly discouraged in this Circuit. *See Royal and Sun Alliance Ins. Co of Canada v. Century Intern. Arms. Inc* 466 F.3d 88, 96 (2d. Cir. 2006). As fiduciaries of News Corp, Defendants should be seeking prompt redress of the violations of law alleged in this action rather than thwarting recovery.

### 2.      Defendants' Assertion of Severe Prejudice is not Credible

Defendants cannot seriously contend – nor does the record support – that this action constitutes "severe prejudice." Defendants fail to cite a single case in support of their contention that Defendants will be "severely prejudiced" if they are forced to defend two actions in two jurisdictions. Def. Mem. at 20. Furthermore, given that concurrent state and federal litigation is entirely appropriate under both *Colorado River* and *Landis*, the mere fact that a defendant is required to defend its wrongful conduct in two suits rather than one cannot be viewed as an undue burden.

In moving to stay this action, Defendants argue that pursuing these derivative claims in this Court will result in their severe prejudice. Defendants further argue that Plaintiff's rights will be adequately protected if this action is stayed. However, News Corp, and the lawyers who represent it, are controlled by the very individuals who will be liable to News Corp for millions of dollars if this action is successful. It is hard to imagine a clearer conflict of interest. Here, inconsistent with the equitable principles of derivative litigation, Defendants have apparently

taken it upon themselves to make this determination.   Moreover, as this Court retains the ultimate and exclusive jurisdiction to resolve some of the violations of law alleged, Defendants could have limited any duplication of efforts by responding on the merits to the Plaintiff's complaint, rather than filing the instant motion, which will only delay these proceedings.

### E.  Proceeding with this Action will Promote the Orderly Course of Justice

Unnecessarily delaying this action by issuing a stay will hinder, rather than promote, the orderly course of justice.   For the reasons discussed above, there is a substantial doubt that the State Action will resolve this Federal Action.   As such, Defendants' assertion that the state court has the ability to dispose of this action is unpersuasive.   Even if Defendants were correct in their assertions of a "risk of divergent rulings" should this case proceed, "the mere potential for conflict in the results of adjudications does not, without more, warrant staying exercise of federal jurisdiction."   *AmerisourceBergen Corp. v. Roden,* 495 F.3d 1143, 1151 (9th Cir. 2007); *see also In re Comverse Tech, Inc.* 2006 WL 3193709 at *1.

### IV.    CONCLUSION

For the foregoing reasons, Plaintiff requests that the Court deny Defendants' request to stay these proceedings.


DATED:  January 6, 2012               **MURRAY FRANK LLP**

By:  *s/ Gregory B. Linkh*
Gregory B. Linkh (GL 0477)
glink@murrayfrank.com
Brian P. Murray (BM 9954)
bmurray@murrayfrank.com
275 Madison Avenue, Suite 801
New York, New York 10016
Telephone:    (212) 682-1818
Facsimile:    (212) 682-1892

*Liaison Counsel for Plaintiff Gregory L. Shields*

**GLANCY BINKOW & GOLDBERG LLP**
Lionel Z. Glancy
Michael Goldberg
Louis Boyarsky (admitted *pro hac vice*)
Elizabeth Gonsiorowski  (EG 1212)
1925 Century Park East, Suite 2100
Los Angeles, California 90067
Telephone: (310) 201-9150
Facsimile: (310) 201-9160
info@glancylaw.com

*Counsel for Plaintiff Gregory L. Shields*

1

**PROOF OF SERVICE VIA EMAIL & U.S. MAIL**

2

I, the undersigned, say:

3

I am a citizen of the United States and am over the age of 18 and not a party to the within

4

action. My business address is 1925 Century Park East, Suite 2100, Los Angeles, California 90067.

5

On January 6, 2012, I served the following document:

6

**PLAINTIFF GREGORY L. SHIELDS' MEMORANDUM IN OPPOSITION TO**

7

**DEFENDANTS' MOTION TO STAY PROCEEDINGS**

8

on counsel for the parties in this action, addressed as stated below:

9

See Attached Service List

10

**By Electronic Mail**: By causing the document to be sent to each party via Electronic

Mail at the electronic addresses listed on January 6, 2012.

11

12

**And By Mail**: By placing true and correct copies thereof in individual sealed envelopes,

with postage thereon fully prepaid, which I deposited with my employer for collection and

13

mailing by the United States Postal Service. I am readily familiar with my employer's practice

for the collection and processing of correspondence for mailing with the United States Postal

14

Service. In the ordinary course of business, this correspondence would be deposited by my

employer with the United States Postal Service that same day.

15

Executed on January 6, 2012, at Los Angeles, California.

16

I certify under penalty of perjury under the laws of the United States of America that the

17

foregoing is true and correct.

18

19

Harry H. Kharadjian

20

21

22

23

24

25

26

27

28

1                             SERVICE LIST

2    Jay B. Kasner
     Scott D. Musoff
3    Skadden, Arps, Slate, Meagher & Flom LLP
     Four Times Square
4    42nd floor
     New York, NY 10036
5

6    Brian Jason Fischer
     Marisa K. Perry
7    Jenner & Block LLP
     919 Third Avenue, 37th Floor
8    New York, NY 10022

9    Eugenie C. Gavenchak
     Jenner & Block, LLP
10   1211 Avenue of the Americas, 13th Floor
     New York, NY 10036
11

12   Julie A. Shepard
     Richard L Stone
13   Jenner & Block LLP
     633 West 5th Street
14   Suite 3600
     Los Angeles, CA 90071
15

16   Kenneth David Klein
     Hogan Lovells US LLP
     1999 Avenue of the Stars, Suite 1400
17   Los Angeles, CA 90067

18

19

20

21

22

23

24

25

26

27

28